[Crim. No. 29973. Second Dist., Div. Four. Aug. 11, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID MICHAEL MALONE, Defendant and Appellant.

650

**COUNSEL**

Ronald S. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Susan D. Martynec, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KINGSLEY, J.**—Defendant was charged: (count I) with oral copulation with Janice Trent, in violation of subdivision (c) of section 288a of the

Penal Code; (count II) with robbery of Janice Trent, in violation of section 211 of the Penal Code; (count III) with kidnaping Janice Trent, in violation of section 207 of the Penal Code; (count IV) with kidnaping Renae Staton, in violation of section 207 of the Penal Code; and (count V) with false imprisonment of Renae Staton, in violation of section 236 of the Penal Code. The information was amended to plead two prior convictions and defendant admitted them. After a jury trial, he was found guilty as follows: (count I) guilty as charged; (count II) guilty of robbery in the first degree, done with great bodily injury within the meaning of section 213 of the Penal Code; (count III) guilty as charged; (count IV) guilty of attempted kidnaping.[1] He was sentenced to state prison in the manner hereinafter discussed.

### Counts I, II and III

The three counts all encompass a single episode involving Janice Trent. Ms. Trent was an off-duty prostitute; according to her testimony, on the evening of March 12, 1976, defendant picked her up in his automobile, pointed "a gun" at her, drove her to a drive-in where he compelled her to have oral copulation with him. During the trip and during the drive-in incident, defendant hit Ms. Trent several times, tied her hands with a cord and burned her back with his cigarette. After leaving the drive-in, defendant drove to a drive-in restaurant where they had soft drinks. As they left the restaurant, defendant ordered Ms. Trent to give him $5 from her purse; she complied.

Although defendant produced alibi testimony as to the night in question, the jury accepted Ms. Trent's testimony, which was supported by corroboration of her descriptions of the defendant (including tattoos) and by the discovery by the police of the gun used. On this appeal, defendant does not attack the sufficiency of the evidence to support the verdicts on counts I and III; he attacks the degree of the robbery involved in count II and the finding as to section 213 of the Penal Code. He also alleges, with reference to all four counts on which he was convicted, prejudicial error by the prosecuting attorney and the court.

### Counts IV and V

These two counts involve an incident on April 1, 1976. On that afternoon, Renae Staton, a prostitute, was picked up by defendant. According to her testimony, after driving a short distance, defendant

---

[1]Count V was dismissed.

produced a gun. She became frightened and jumped from the car. Defendant admitted the pick-up but claimed he had only offered her a ride, became disgusted when she solicited him for acts of prostitution and ordered her from the car. He denied threatening her with a gun. Defendant does not attack the sufficiency of the evidence to support the verdict on count IV; he does attack the sentence thereon imposed.

I

During his direct examination, defendant testified that he gave consent to the police to search his car and his house. The search disclosed, in his car, the gun allegedly used by defendant. Search of the house followed. Defendant testified as follows:

"Q. Now, at sometime did you tell the police to discontinue their search?

"A. No, never, except when they—before they began the search I told them, 'Maybe I should have a lawyer present.'

"And they said if I signed this I could call a lawyer.

"Q. All right. What happened?

"A. They went on and on and on and on until about 10 o'clock; and, you know, I finally told them, 'I would like to have,' you know, 'a lawyer present. I don't know what the heck is going on.'

"And at that time another detective had come, a Mr. Hodell, and they had a conference over in the corner. And then they decided to stop the search. And at that time I was put in the car and taken into town." On cross-examination, the prosecutor asked defendant several questions in an attempt to discover at what point the search of the house had stopped. After several questions along that line, and not too informative answers, defense counsel objected: "Just a second. It has been asked and answered several times." The trial judge interjected, and the following colloquy resulted: "THE COURT: Let's get it straight one more time.

"THE WITNESS: I asked if I would be able to call an attorney if I agreed to sign this form. The officers told me, 'Yes.' I signed the form. I went along with the search of the car and the house and everything else. And it went on and on, and they had already recovered everything they

wanted to recover, as far as I knew, Mr. Green. But I said, 'May I call an attorney?' And then we left.

"Q. After you asked for an attorney the search was stopped; is that true?

"A. After the second time I asked, yes, sir.

"Q. Okay.

"THE COURT: Tell us when you first asked to talk to a lawyer.

"THE WITNESS: When we were outside, Your Honor. When we were still outside and they took my keys and so forth, they asked me to sign this. They wrote it out. They said, 'Will you consent to a search?'

"I said—when they told me what I was arrested for, I said, 'Certainly. I have nothing to hide.'

"So they asked me to sign this. I said, 'I'll sign this, but I think I should have a lawyer present.'

"And they said, 'If you sign this, you can have one. We don't object to that.'

"THE COURT: All right.

"THE WITNESS: So I signed that. Then they searched the car.

"THE COURT: Wait a minute. You signed it. Did you then said, 'I want to call a lawyer now'?

"THE WITNESS: Yes, I did."

It is contended that the cross-examination, and the judge's questioning, improperly emphasized defendant's constitutional right to refuse a warrantless search. We do not, on the record before us, reach that issue. The only objection to the cross-examination was the one above quoted; there was no objection on the ground now urged, either to the prosecutor's questions or to those of the judge. No request to strike, or for an admonition, was ever made. Under those circumstances, there is no action of the trial court before us for review.

## II

■ The People's theory was that the "gun" found in defendant's car was the one used in both episodes. A police expert testified that that gun was an "air gun." The trial court gave to the jury CALJIC No. 9.13.[2] It is contended that giving that instruction, without more, in effect told the jury that the air gun was the kind of weapon envisaged by section 211a of the Penal Code, as that section then read. We see no error. While an air gun is not a "firearm," since it uses no explosive to project a bullet, it is still an instrument used to shoot, but one using compressed air rather than explosive for the purpose of projection. As such, it is a "gun" within the meaning of the instruction given.

## III

■ The trial court imposed sentence on the four counts of which defendant was convicted as follows: "Sentences as to Counts 1 and 2 are ordered to run CONSECUTIVELY. Sentences as to Counts 3 and 4 are ordered to run CONCURRENTLY with each other and CONCURRENTLY with sentences as to Counts 1 and 2."

Defendant contends that the sentence violated the provisions of section 654 prohibiting double punishment. The Attorney General agrees that it was error not to have stayed the sentence on count III pending the service of the sentence on count I, but argues that the sentences were otherwise proper. We agree. While all three counts regarding the Trent episode were part of the same series of events, the robbery involved in count II was, on the record before us, clearly an afterthought, not committed as part of the objective—sexual intercourse—involved in counts I and III. Count IV involved a different victim, in an episode totally unconnected with the Trent episode. We modify the judgment in accordance with the Attorney General's concession, and in the form approved in *In re Wright* (1967) 65 Cal.2d 650, 655, footnote 4 [56 Cal.Rptr. 110, 422 P.2d 998].

---

[2]CALJIC instruction No. 9.13 reads:

"A dangerous or deadly weapon means any weapon that is capable of being used to inflict great bodily injury or death.

"A weapon such as a gun, dirk or blackjack may be said as a matter of law to be a dangerous or deadly weapon. It is not necessary that such a weapon be used or be visible, nor is it necessary to show that the possessor intended to use it in the robbery.

"Other instruments or objects which are not weapons in the strict sense of the word are, however, dangerous or deadly weapons if they are capable of inflicting great bodily injury or death and it is shown that the possessor intended to use such instrument or object in the robbery as a weapon of offense or defense should the circumstances require."

## IV

Defendant contends that the sentence on count II (robbery) should not have been enhanced under section 213 of the Penal Code. That section provides that the sentence for robbery of the first degree shall be increased from "not less than five years" to "from 15 years to life" in cases where "the defendant committed robbery, *and in the course of commission of the robbery,* with intent to inflict such injury, inflicted great bodily injury on the victim of the robbery."[3] It is not here denied that Ms. Trent did suffer great bodily injury and that that injury was intentionally inflicted. The contention is that those injuries were inflicted in the course of the kidnaping and sexual assault; but that the robbery came after those offenses and the infliction of the injuries was, thus, not "in the course of commission of the robbery." We agree.

Although Ms. Trent testified that she gave defendant the $5 in fear that he would repeat the earlier injuries, there is no evidence that he did inflict any injury in carrying out the robbery. We modify the judgment accordingly.

The judgment is modified in the following particulars: (1) strike from the judgment and from the nunc pro tunc order of October 29, 1976, all reference to the infliction of bodily injury to the victim in count II; (2) and modify the sentences imposed to read as follows: " 'IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the said defendant be punished by imprisonment in the state prison for the term prescribed by law on said counts. Sentences as to Counts I and II are ordered to run consecutively. Sentence as to Count III is stayed [pending service of the sentence on Count I, and thereafter is permanently stayed]. The sentence as to Count IV is ordered to run concurrently with Counts I, II and III.' " As so modified, the judgment is affirmed.

Files, P. J., and Dunn, J., concurred.

A petition for a rehearing was denied September 6, 1977, and appellant's petition for a hearing by the Supreme Court was denied October 6, 1977.

---

[3] Italics added.