Filed 6/25/14

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C067983 |
| Plaintiff and Respondent, | (Super. Ct. No. 10F00375) |
| v. | |
| JEFFREY ELDER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Allen H. Sumner, Judge. Affirmed as modified.

Law Offices of John P. Dwyer, John P. Dwyer and Jin H. Kim for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman, and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part III of the Discussion.

1

Defendant Jeffrey Elder appeals after being convicted of two counts of kidnapping for robbery (Pen. Code, § 209[1]), two counts of robbery (§ 211), and one count of assault with a deadly weapon (§ 245, subd. (a)(1)), each count involving personal infliction of great bodily injury (GBI) (§ 12022.7). Defendant contends no substantial evidence supports the findings that he inflicted GBI in the commission of any of the charged offenses, because the victim dislocated his own finger trying to prevent defendant's escape. In the alternative, he contends that because the elements of the assault with a deadly weapon charge had been completed before his attempted escape that the injury was not inflicted "in the commission" of that charge. Defendant also contends the trial court improperly imposed two crime prevention fines (§ 1202.5) on the robbery counts for which sentence was stayed under section 654 or, alternatively, should have imposed only one fine.

In the published portion of this opinion, we reject defendant's contentions regarding the GBI enhancements. We conclude that the defendant was a direct cause of the injury sustained by the victim, because that injury was inflicted as the victim resisted the commission of the charged crimes and during his attempt to restrain defendant.

In the unpublished portion of this opinion, we conclude that one section 1202.5 fine must be stricken and order the other one stayed pursuant to section 654. We also order correction of the abstract of judgment to reflect a one-year sentence for assault with a deadly weapon, which the trial court orally imposed as reflected in the reporter's transcript and a stay of the section 12022.7 enhancement as to that count pursuant to section 654. We otherwise affirm the judgment.

---

[1] Undesignated statutory references are to the Penal Code in effect at the time of defendant's crimes.

## FACTUAL AND PROCEDURAL BACKGROUND

By an amended information filed in December 2010, the prosecutor charged defendant with seven counts involving two different incidents. Counts One and Two related to an incident on December 18, 2009, and are not at issue in this appeal, because the trial court declared a mistrial as to them after the jurors were unable to reach a verdict.

All other counts relate to events which occurred on the evening of January 14, 2010, when defendant kidnapped and robbed a husband and wife and assaulted the husband. Those counts are as follows:

**Counts Three and Five** -- kidnapping for robbery of Delbert Kaleikini and Devery Hanakeawe (§ 209, subd. (b)(1));

**Counts Four and Six** -- robbery of Delbert Kaleikini and Devery Hanakeawe (§ 211); and

**Count Seven** -- assault with a deadly weapon, a hard metal object, and by means of force likely to produce GBI on Delbert Kaleikini (§ 245, subd. (a)(1)).

The pleading alleged as to Counts Three, Four, and Seven, that defendant personally inflicted GBI on victim Delbert Kaleikini.

### Trial Proceedings

On January 14, 2010, shortly after 7:00 p.m., defendant entered an unlocked, unoccupied van in a parking lot while its occupants, Delbert Kaleikini and his wife Devery Hanakeawe, were inside a Money Mart check cashing store. The van belonged to the victims' niece and was loaded with empty boxes because she was moving. The victims returned to the van and drove towards their home. Defendant emerged from behind the boxes in the back of the van, brandished what turned out to be a BB gun, and demanded that the victims drive him to West Sacramento. The victims complied. As he drove, Kaleikini turned to look at defendant a few times, and each time defendant hit the

3

victim in the head with the butt of the gun.[2]  Defendant demanded that Kaleikini turn over his wallet, and he did so.  Defendant demanded that Hanakeawe give him a money envelope in her possession.  She did so but held back some of the cash.  Defendant demanded all of it, and she complied.

Kaleikini drove close to the vehicle ahead of him, so if it turned, Kaleikini would have to come to a stop, giving his wife a chance to jump out of the van.  And that is what happened.  Defendant tried to grab her, but she escaped without injury.

Kaleikini then accelerated abruptly and slammed on the breaks, throwing defendant back and then forward inside the van.  When defendant flew forward, Kaleikini hit defendant in the face.

Defendant tried to exit the van through the sliding passenger door, but was unable to exit because the door was stuck.  Kaleikini grabbed defendant's hooded sweatshirt.  At this point, defendant was facing the front passenger seat, and his right arm and leg extended out of the van door.  While defendant was partly out of the door, Kaleikini accelerated and then hit the brakes again, which caused the sliding door to slam into defendant's body.  Kaleikini testified that as defendant was struggling to get out of the hoodie and get out of the van, Kaleikini's right ring finger "got pulled in the hoodie" and the finger "snapped."[3]  Defendant pushed off the front passenger seat and jumped out of the vehicle.  Upon exiting, defendant fell and then took off running, leaving his gun and some money strewn on the roadway.  Kaleikini recovered about $900 of the $1,600 stolen by defendant.

---

[2]  The prosecution did not argue any head injury as GBI.

[3]  On appeal, both sides refer to the injury as a dislocated finger.  The People cite the victim's testimony that the finger had to be snapped into place and splinted and was permanently bent as a result of this injury.  Defendant points out that there was no medical testimony about the precise nature of the injury, but he does not dispute that it was GBI.

A police officer detained defendant on the street and arrested him after Hanakeawe identified him in a field show-up. The officer testified defendant smelled faintly of alcohol but did not show signs of drug or alcohol intoxication. Police found $200 in twenties and BBs in defendant's pockets.

At trial, both victims identified defendant as the perpetrator.

Defendant testified at trial. He said he smoked marijuana and drank alcohol for much of the day in question. He was walking through the parking lot, saw the van, and looked inside to see if it had a stereo he could steal. He entered the van through an unlocked passenger sliding door. He saw the empty boxes and thought the van was abandoned. He decided to lie down in the back of the van because his head was spinning and his heart was pounding from the drugs. He fell asleep and awoke, feeling dizzy, when he felt the van moving. The next thing he remembered was being flung forward when the driver hit the brakes. The driver grabbed him, and defendant tried to get out of the van. He grabbed an envelope of money as he left the van. He testified he had no memory of hitting the driver or of demanding money from the victims.

Defense counsel argued to the jury that, due to his alcohol and drug consumption, defendant did not have the specific intent necessary for robbery and kidnapping for robbery. The defense also argued the BB gun was not a deadly weapon, as evidenced by the lack of any injury to Kaleikini's head and that defendant did not cause the injury to Kaleikini's finger.

At the conclusion of closing arguments, pursuant to section 1118.1,[4] defendant moved for dismissal of the GBI allegation attached to count seven, the assault with a

---

[4] Section 1118.1 provides, "In a case tried before a jury, the court on motion of the defendant or on its own motion, at the close of the evidence on either side and before the case is submitted to the jury for decision, shall order the entry of a judgment of acquittal of one or more of the offenses charged in the accusatory pleading if the evidence then before the court is insufficient to sustain a conviction of such offense or offenses on

5

deadly weapon charge. Defense counsel argued that there was not enough evidence to submit the enhancement to the jury, because the finger injury was "too attenuated" from being hit with the BB gun. The trial court denied the motion, stating, "it seems to me that there's sufficient evidence that in the course of the struggle and the flailing about, the assault the People are alleging was all part of one continuous transaction. . . ."

The jury found defendant guilty on Counts Three through Seven and found true the GBI allegations as to Counts Three, Four, and Seven.

**Sentencing**

At sentencing, the defense asked the trial court to dismiss the GBI enhancement as to count seven or strike the punishment for those enhancements pursuant to section 1385,[5] arguing defendant did not personally inflict the injury. The court declined to do so, noting defendant's actions of trying to jump out of the van and break free from the victim directly caused the injury.

The trial court sentenced defendant to a total term of 18 years to life, as follows:

**Count Three, kidnapping for robbery** (Delbert Kaleikini) -- seven years to life plus three years for the GBI enhancement;

**Count Five, kidnapping for robbery** (Devery Hanakeawe) -- seven years to life consecutive;

---

appeal. If such a motion for judgment of acquittal at the close of the evidence offered by the prosecution is not granted, the defendant may offer evidence without first having reserved that right."

[5] Section 1385, subdivision (a) provides in pertinent part: "The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." Section 1385, subdivision (c)(1) provides: "If the court has the authority pursuant to subdivision (a) to strike or dismiss an enhancement, the court may instead strike the additional punishment for that enhancement in the furtherance of justice in compliance with subdivision (a)."

**Count Seven, assault with deadly weapon**[6] -- one year consecutive plus three years for the GBI enhancement, the latter of which was stayed pursuant to section 654; and

**Counts Four and Six, robbery** (both victims) -- concurrent three-year terms plus the three-year GBI enhancement on Count Four, all stayed pursuant to section 654.[7]

## DISCUSSION

### I. Personal Infliction of GBI

Defendant argues the GBI enhancements on each of the charges violate state law and due process and must be stricken because there was no substantial evidence that he directly performed the act that caused injury to the victim's finger. We disagree.

### A. Standards of Review

To the extent defendant challenges sufficiency of the evidence, we view the evidence in the light most favorable to the judgment to determine whether it discloses substantial evidence, i.e., evidence that is reasonable, credible, and of solid value, such that a reasonable trier of fact could find the essential elements of the charged crime or allegation proven beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560]; *People v. Johnson* (1980) 26 Cal.3d 557, 578.) To the extent defendant's argument implicates statutory interpretation, our review is de novo. (*People*

---

[6] We do not find a reference to this one-year sentence in the abstract of judgment, though the trial court orally pronounced this sentence. The court also said it imposed a three-year GBI enhancement on Count Seven, and stayed it pursuant to section 654, though the abstract of judgment says "X" rather than "S" for "stayed." The court did not say it was staying the one-year sentence. Moreover, both parties on appeal acknowledge the total sentence was 14 years to life indeterminate, plus four years -- which includes the one-year for Count Seven.

[7] For a trailing drug diversion violation case, the court ordered defendant to serve a concurrent term of 90 days, and the court terminated defendant's probation for a misdemeanor conviction of domestic violence without further sentence.

7

*v. Jones* (2001) 25 Cal.4th 98, 107-108 (*Jones*); *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 800-801 [If the inquiry requires a consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and will be reviewed de novo]; *People v. Cromer* (2001) 24 Cal.4th 889, 894-904 [where mixed questions of law and fact implicate constitutional rights, we apply de novo review].) Here, both standards yield the same result -- affirmance of the judgment.

### B. "Personally Inflicts" GBI

Section 12022.7, subdivision (a), provides: "Any person who *personally inflicts* great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." (Italics added.) The issue presented here is whether defendant *personally inflicted* GBI when the victim, who in the course of resisting the perpetration of crimes against him by defendant and attempting to restrain defendant, injured his finger while defendant struggled to get free. We conclude that by struggling to break free, defendant inflicted GBI within the meaning of section 12022.7, subdivision (a).

For the GBI enhancement to apply, "the defendant must be the direct, rather than the proximate cause, of the victim's injuries." (*People v. Warwick* (2010) 182 Cal.App.4th 788, 793 (*Warwick*); see also *People v. Cole* (1982) 31 Cal.3d 568, 572 (*Cole*).) This principle has been applied in a variety of circumstances.

Our high court first announced this principle in *Cole*. In that case, defendant and an accomplice committed a residential robbery/burglary. During the commission of the crime, the defendant directed his accomplice to kill the victim. The accomplice then beat the victim with a gun. During the beating, the defendant held another gun on the victim and blocked the victim's escape. (*Cole*, *supra*, 31 Cal.3d at p. 571.) The central issue was whether a person who does not personally strike a victim, but aids and abets a confederate who personally inflicted GBI can be liable for an enhanced sentence pursuant

8

to section 12022.7.  The *Cole* court held, "the Legislature intended to impose an additional penalty for causing great bodily injury only on those principals *who perform the act that directly inflicts the injury*, and that one who merely aids, abets, or directs another to inflict the physical injury is not subject to the enhanced penalty of section 12022.7." (*Cole,* at p. 571, italics added.)

In *People v. Cross* (2008) 45 Cal.4th 58 (*Cross*), our high court addressed the issue of whether the infliction of GBI required that a defendant directly apply force.  In *Cross*, the defendant was convicted of nonforcible lewd acts on a child under 14 and a section 12022.7, subdivision (a) GBI enhancement was found true. (*Cross*, at pp. 60-61, 63.)  The defendant had non-forcible sexual intercourse with the minor, who then became pregnant.  Thereafter, the defendant encouraged the minor to get an abortion, which required a surgical procedure.  The Supreme Court held that a pregnancy without medical complications that results from nonforcible sexual conduct with a minor could support a GBI finding. (*Id.* at pp. 61, 63, 65-66.)  The court observed that the plain language of the statute indicates the Legislature intended the enhancement to be applied broadly and stated, "To the extent defendant argues that great bodily injury invariably requires the application of physical force to the victim in order to cause great bodily injury, we reject that view." (*Id.* at p. 66, fn. 3.)  The court also noted, "Commonly understood, the phrase 'personally inflicts' means someone 'in person' [citation], that is, directly and not through an intermediary, 'cause[s] something (damaging or painful) to be endured' [citation]." (*Id.* at p. 68.)

Similarly, in *Warwick*, the appellate court recognized that a defendant need not apply physical force to be liable for an enhanced sentence under section 12022.7, subdivision (d), which punishes the personal infliction of GBI upon a child under age five.  In *Warwick*, the defendant hid her pregnancy and gave birth in her bedroom.  The baby required medical attention, but she concealed the birth, only partially covered the baby with a blanket, and sent her mother away when the mother knocked on the door.

9

(*Warwick, supra,* 182 Cal.App.4th at p. 791.)  When discovered hours later, the baby had hypothermia resulting in loss of brain cells.  (*Id*. at p. 792.)  On appeal, the defendant admitted her negligence caused GBI, but contended she did not "personally inflict" these injuries.  (*Id*. at p. 793.)  The appellate court affirmed the defendant's conviction for child abuse/neglect with a GBI enhancement.  (*Id*. at p. 795.)  The court acknowledged that "the defendant must be the *direct*, rather than proximate cause, of the victim's injuries," (*id*. at p. 793), but following *Cross*, rejected the notion that the application of physical force was required.  (*Warwick,* at p. 794.)  The court also disagreed with the defendant that "affirmative action" is required for GBI, and concluded that the definition of "personally inflicts" referenced by the *Cross* court did not preclude the failure to act where action is required (though there was evidence of affirmative action in the failure to adequately cover the baby and sending her mother away).  (*Id*. at p. 795.)

Thus, based on *Cross* and *Warwick* neither the application of physical force, nor affirmative action by the defendant is necessarily required to support a section 12022.7 GBI enhancement.

Furthermore, a defendant is not absolved of liability for an enhanced sentence under section 12022.7 where others are involved at the time the injury is inflicted.  For example, in *People v. Guzman* (2000) 77 Cal.App.4th 761 (*Guzman*), the court upheld the "personally inflicted" GBI enhancement under section 12022.7, where the defendant violated the Vehicle Code by making an unsafe left turn in front of another vehicle and collided with another car, causing injury to the defendant's passenger.  The *Guzman* court rejected the defendant's argument that, because another vehicle was involved, he did not directly cause the injury.  (*Id*. at p. 764.)  The court reasoned that the defendant's volitional act of turning his car into oncoming traffic "was the direct cause of the collision and therefore was the direct cause of the injury."  (*Ibid*.)  Citing group assault cases, the *Guzman* court observed that, "[m]ore than one person may be found to have directly participated in inflicting a single injury."  (*Id*. at p. 764, citing *People v. Corona*

10

(1989) 213 Cal.App.3d 589, 593; *People v. Dominick* (1986) 182 Cal.App.3d 1174, 1210-1211.) The court in *Guzman* further noted, "the accidental nature of the injuries suffered does not affect this analysis. The 1995 amendment to section 12022.7[8] deleted the requirement that the defendant act 'with the intent to inflict the injury.' " (*Guzman,* at p. 764.)

Given that more than one person may be found to have directly participated in inflicting an injury, the fact that the victim here grabbed defendant as he struggled to get away, does not absolve defendant from responsibility for the injury he caused by struggling and pulling away.

Defendant relies heavily on *People v. Rodriguez* (1999) 69 Cal.App.4th 341 (*Rodriguez*), a case defendant contends is analogous to the instant case. To the contrary, we conclude *Rodriguez* supports affirmance of the GBI finding here. In *Rodriguez*, the issue was whether a prior conviction for resisting a peace officer resulting in bodily injury was a serious felony under the three strikes law, as a felony in which the defendant "personally inflicted" GBI (§§ 1192.7, subd. (c)(8), 1170.12, subd. (b)(1)). The evidence of the prior conviction showed only that the officer tackled the defendant, who was fleeing on a bicycle, and when both men fell to the ground, the officer hit his head and was injured. (*Rodriguez,* at p. 346.) In asking the jury to decide whether the defendant's prior conviction constituted a serious felony, the trial court instructed the jury that a person personally inflicts injury when he directly performs an act that causes the injury, but the court also instructed the jury, " 'A cause of an injury is an act that sets in motion a chain of events that proceed [*sic*] a direct, natural and possible consequence of the act, the injury, and without which the injury would not occur.' " (*Id*. at pp. 346-347.) The appellate court in *Rodriguez* held the instruction improperly equated "personally inflict"

---

**8** Statutes 1995, chapter 341, section 1, pages 1851-1852.

with "proximate cause." (*Id*. at pp. 347-349.) "To 'personally inflict' injury, the actor must do more than take some direct action which proximately causes injury. The defendant must directly, personally, himself inflict the injury." (*Id*. at p. 349.) The court concluded the instructional error was prejudicial, because as a matter of law, the evidence did not show that the defendant directly inflicted the injury. (*Id*. at p. 352.) The court observed, "[the defendant] did not push, *struggle* or initiate any contact with the officer during the 1992 incident. Instead, the evidence shows that Rodriguez was trying to escape arrest on a bicycle and *the officer injured himself* when he tackled [the defendant]." (*Ibid*., italics added.)

Here, unlike *Rodriguez*, defendant engaged in a physical struggle with the victim. It was during the volitional act of struggling and attempting to pull away when the victim's injury was inflicted. Defendant was a direct cause of the injury. Unlike in *Rodriguez*, the victim did not injure himself. Neither the accidental nature of the injury, nor the fact that it takes two to struggle, absolves defendant of responsibility for personally inflicting GBI on the victim.

Substantial evidence shows defendant directly caused the injury within the meaning of section 12022.7.

## II. GBI During the Commission of the Assault

Defendant argues in the alternative that the GBI enhancement on Count 7, assault with a deadly weapon (an enhancement which was stayed pursuant to section 654) must be stricken because the injury did not occur "during the commission of the assault" but rather after the assault was already completed. We disagree.

Defendant again frames his contention as one of insufficiency of the evidence, but it also implicates statutory interpretation calling for de novo review. (*Jones, supra*, 25 Cal.4th at pp. 107-108.) Again, defendant's position lacks merit under either standard.

Section 12022.7 imposes the enhancement when GBI is inflicted "in the commission of a felony." In *Jones*, the court construed the phrase "in the commission

of" in the context of section 12022.3, which imposes an enhancement where a defendant uses a deadly weapon "in the commission of the violation" of any one of several listed sex offenses. (*Jones, supra*, 25 Cal.4th at p. 107.) In *Jones*, after defendant committed sex offenses against the victim, he exited the car where the offenses had been perpetrated. From outside of the car, he pointed a knife at the victim, who was still inside, and fled thereafter. (*Id*. at pp. 101-102.) The Supreme Court rejected the defendant's argument that, because he had completed the elements of his sex offenses before using the knife, the weapons-use enhancement was unrelated to those crimes. (*Id.* at p. 110.) In construing the phrase "in the commission of," our high court looked for guidance to case law construing other Penal Code provisions that use the phrase identical or similar to "in the commission of" -- specifically felony-murder and the felony-murder special circumstance. (*Id*. at p. 108.) In felony-murder, the focus is not on chronology, but on the relationship between the underlying felony and the killing. (*Id*. at p. 109.) A murder may be determined to have been committed in the perpetration of a felony "if it occurred after the felony, e.g., during the attempt to escape or for the purpose of preventing discovery of the previously committed felony." (*Ibid*.) The *Jones* court added that, with respect to the weapons-use enhancement, the legislative intent to deter the use of weapons required that "use" be broadly construed. Thus, such use "may be deemed to occur 'in the commission of' the offense if it occurred *before, during, or after* the technical completion of the felonious . . . act." (*Id*. at p. 110.)

Defendant argues *Jones* is distinguishable, because it held the commission of the crime continues as long as the assailant "maintains control over the victim," and here defendant was no longer in control when the victim's finger snapped. After the *Jones* court stated that weapon use before, during and after the technical completion of the crime could constitute "in the commission of" the crime, the court went on to say, "The operative question is whether the sex offense *posed a greater threat of harm--i.e., was more culpable*--because the defendant used a deadly weapon to threaten *or* maintain

13

control over his victim.  (*Jones*, *supra*, 25 Cal.4th at p. 110, italics added; see *id*. at pp. 109-110.)  The "operative question" in the context of the facts in *Jones*, does not necessarily translate to be the same operative question here.  Whether there was a greater threat of harm or a defendant is more culpable does not always turn solely on whether the defendant is was "in control" of the victim.

The victim here began his resistance to defendant at a time when defendant was clearly in control and there was a continuing threat of additional blows.  The threat or potential of being struck again continued as long as the defendant was present with the resisting victim, whether he was "in control" of the victim, was losing control of the victim, or had lost control as the victim resisted defendant's assault.  We do not read the *Jones* court's observation that the "the commission" of a sexual offense "continues as long as the assailant maintains control over the victim" (*Jones, supra,* 25 Cal.4th at p. 109) as signaling that "the commission" ends when the perpetrator begins to lose control over the victim.  Defendant's narrow reading of *Jones*, which would require the perpetrator to have actually maintained complete control of the victim at the time the injury is inflicted, is inconsistent with *Jones*'s holding that events after the offense, such as attempting to escape, are still "in the commission of" the offense.  (*Ibid*.)  As the *Jones* court noted, "a broad construction" of the phrase "in the commission of" advances the purpose of the weapons enhancements.  (*Id*. at p. 111.)  In our view, a broad construction of the GBI enhancements advances similar purposes.  Our construction advances the protection of victims from injury inflicted by perpetrators fleeing the location of the offense.

In *People v. Johnson* (1980) 104 Cal.App.3d 598, the court addressed the concept of "in the commission of" in the context of defendants escaping after the elements of the underlying offense had been completed.  In *Johnson*, the victim was at a "disco" and discovered her handbag was missing from the chair where she had placed it.  She and the manager went looking and entered the men's restroom of a nearby bowling alley, where

14

the victim saw her purse on the floor of one of the stalls and the legs of two men. The manager left to call the police. The victim tried to follow the manager, but was grabbed from behind by the hair and forced to the ground. (*Id*. at p. 603.) While the two men fled in the opposite direction to exit out of door which proved to be locked, the victim ran to the door of the disco, but it was also locked. Just as the door to the disco was about to be opened for the victim, she was struck by defendant and lost consciousness. (*Ibid*.) The defendant, convicted of receiving stolen property, argued his crime was completed upon taking possession of the stolen property knowing it was stolen, and his involvement with the stolen property began and ended in the bathroom stall, and therefore the injury inflicted on the victim outside the bathroom did not occur in the commission of receiving stolen property, but rather was an additional independent crime. (*Id.* at p. 604.) The court in *Johnson* said, "In considering the words of a statute, an appellate court is required to read the enactment in the light of the objective sought to be achieved by it as well as the evil sought to be averted. [Citations.] In enacting section 12022.7, the clear intent of the Legislature was to deter infliction of serious bodily injury on victims of burglary, robbery and other felonies, including the offense of receiving stolen property. Since human experience teaches that a person who has committed an offense will attempt to escape from its situs and since the risk of violent confrontation and consequent injury is at least as great during the course of flight as during the perpetration of the crime itself [citation], for the purposes of section 12022.7, offenses committed during escape from the scene of the crime must be deemed acts in the commission of the crime. The conclusion reached by us is in harmony with the existing case law which in analogous situations (e.g., burglary, robbery), held that the crime is not complete until the felon has won his way to a place of temporary safety. [Citations.]" (*Id.* at p. 608.)

Defendant argues *Johnson* upheld the enhancement because it involved *additional offenses* during the escape, i.e., the assault on the victim. The reasoning in *Johnson* did

15

not turn on this fact, however. Rather, the court's reasoning related to the protection of victims from injuries inflicted by felons fleeing the perpetration of the offense.

Defendant further attempts to distinguish *Johnson* on the ground that the injury inflicted there was intentional while the injury here was accidental. It makes no difference whether defendant intentionally inflicted the injury in trying to break away from the victim or the injury was inflicted accidentally. Section 12022.7 does not require that the defendant intend to inflict GBI. (See *Guzman*, *supra*, 77 Cal.App.4th at p. 764.)

In *People v. Walls* (1978) 85 Cal.App.3d 447, the court held that enhancements for firearm use and infliction of GBI applied to a burglary where the defendants attacked the victim with a gun found in the apartment after the defendants entered. (*Id*. at pp. 452-454.) The defendants argued they could not have used a firearm or inflicted GBI "in the commission of" the burglary, because they acquired the gun and beat up the victim *after* their entry into the premises, and their entry completed the commission of burglary. (*Id*. at p. 453.) The *Walls* court said, "To establish commission of a burglary the prosecution need only prove that one entered the premises with the intent to commit theft or a felony, and the crime is complete for that purpose, but this does not dictate the conclusion that the crime is complete for all purposes precluding consideration of the acts and conduct of the intruder after entry as part of the commission of the crime, or that the crime ends upon entry and cannot continue while he is unlawfully on the premises. . . ." (*Ibid*.) "Section 12022.7 . . . was enacted to deter infliction on victims of serious injury accompanying burglary, robbery, or other felony. In the case of a burglary, if the purpose of the statute is to be advanced, it matters not whether injury was inflicted upon the occupant at the time the burglar gained entry or after the entry was effected. Generally burglaries are committed in secret at a time when the occupants are absent or asleep and in most cases firearm use or injury to the occupant occurs only after the intruder is discovered on the premises. To hold that the phrase 'in the commission' of a felony, as used in sections 12022.5 and 12022.7 . . . excludes firearm use or infliction of great

16

bodily injury *after* the intruder gains entry to the premises with the requisite intent, would lead to the anomalous result that before a burglary sentence can be enhanced under these statutes, the firearm must have been used by the intruder, or he must have inflicted the great bodily injury at the very moment he stepped over the threshold or while trying to effect entry to the premises, a result not only unreasonable but one that defeats the obvious purpose of the statute to offer protection to potential burglary victims who are on the premises. . . ." (*Id*. at pp. 453-454.)

Defendant argues *Walls* is inapposite, because burglary is conceptually different from assault with a deadly weapon, and crimes such as burglary, robbery, and kidnapping involve affirmative action after the initial taking, to escape with the loot or asport the victim. In contrast, says defendant, the crime of assault with a deadly weapon is complete upon the attempted use of the force. Defendant says his assault was complete when he hit the victim in the head for the last time, and there is no evidence he tried to use the gun when he was trying to exit the van. However, here, the GBI occurred during the victim's resistance to being *beaten* in addition to being kidnapped and robbed. The attempt to escape is clearly related to the kidnapping, robbery *and assault* and falls directly within the scope of related activities cited in case law, such as *Jones* and *Johnson*.

Defendant cites *People v. Valdez* (2010) 189 Cal.App.4th 82 (*Valdez*), which reversed a section 12022.7 GBI enhancement where the conviction was for "hit and run" in violation of the Vehicle Code, and the only injury occurred in the "hit" part, i.e., the accident itself. Although the crime is called "hit and run," its purpose is to punish " ' "not the 'hitting' but the 'running.' " ' " (*Id*. at p. 90.) The accident itself was not a crime. The crime was the defendant's subsequent flight from the scene of the traffic accident that caused the injuries. The *Valdez* court struck the section 12022.7 enhancement, because the injuries were caused by acts that occurred *prior* to the criminal act, not as a result of the criminal act.

17

Here, defendant quotes from *Valdez* that "the injuries sustained in the accident . . . were not inflicted *in the commission of* a felony or attempted felony based upon defendant's subsequent flight." (*Valdez, supra,* 189 Cal.App.4th at p. 90.) If defendant means to suggest that *Valdez* stands for the broad proposition that injuries inflicted in fleeing a crime and not inflicted in commission of that crime, we disagree. In *Valdez*, the crime was the flight itself, there was no crime until the flight began, and the injuries were not inflicted during the flight. *Valdez* does not purport to disagree with the authorities holding that injuries inflicted while fleeing after a crime can constitute GBI in the commission of the crime.

Defendant also cites *People v. Arzate* (2003) 114 Cal.App.4th 390. In that case, the defendant had a concealed firearm in his vehicle when a police officer pulled him over for speeding. As the officer approached and leaned into defendant's car, defendant took out the gun and shot him. The jury found the defendant guilty of carrying a concealable and concealed firearm in his car, and the jury found true the allegations that he personally used the firearm (§ 12022.5) and personally inflicted GBI (§ 12022.7). (*Id.* at p. 399.) The *Arzate* court held it was logically inconsistent to inflict GBI and use a gun in the commission of the static offense of carrying a concealed weapon in a vehicle. (*Id.* at pp. 399-401.) "Conceptually the crime of concealment would seemingly end with the firearm's use and thus exposure. In other words, it seems logically inconsistent to be found guilty of both using the gun and inflicting injury while concealing the same gun within a vehicle." (*Id.* at p. 400.) The People cited decisions discussing the phrase "in the commission of the offense" in the context of crimes such as felony murder, burglary, robbery, and kidnapping. (*Ibid.*) "However, as noted, the offense of carrying a concealed firearm in a vehicle is committed with the single passive act of carrying the firearm in a concealed fashion in a vehicle. In contrast, crimes such as felony murder, burglary, robbery and kidnapping involve affirmative actions, even beyond the initial physical act of entry or taking. These crimes encompass the further acts of asportation,

18

escaping with the loot, reaching a place of temporary safety and the like.[9]  They are thus conceptually different from the crime at issue in this case which is complete with the conduct constituting the offense."  (*Id*. at pp. 400-401, original fn. omitted.)  "If a defendant used a firearm, and in so doing inflicted great bodily injury, *the defendant most likely was charged with and convicted of separate assault type crimes to which such enhancements properly applied*--as occurred in the present case."  (*Ibid*., italics added.)

*Arzate* does not help defendant.  Defendant, having committed an assault by hitting the victim in the head with the BB gun during the commission of a kidnapping and robbery, found the tables being turned and began trying to escape to a place of safety when he struggled and pulled away, causing the dislocation of the victim's finger.

Defendant also cites *People v. Malone* (1977) 72 Cal.App.3d 649, which held injury inflicted in the course of kidnapping and sexual assault occurred *before* the victim was robbed, and therefore was not inflicted in the course of the robbery within the meaning of former section 213, which at the time required an enhanced sentence for first degree robbery in cases where " 'the defendant committed robbery, *and in the course of commission of the robbery*, with intent to inflict such injury, inflicted [GBI] on the victim of the robbery.' "  (*Id*. at p. 656.)  In *Malone*, the defendant picked up a prostitute in his car, pointed a gun at her, hit her, drove her to another location, and forced her to have oral copulation with him while he hit her again.  (*Id*. at p. 652.)  He then drove her to a drive-in restaurant, where they had soft drinks.  As they left the restaurant, he demanded money from her purse, and she complied.  (*Ibid*.)  The appellate court's entire discussion of the matter is as follows:  "The contention is that those injuries were inflicted in the course of the kidnap[p]ing and sexual assault; but that the robbery came after those offenses and the infliction of the injuries was, thus, not 'in the course of commission of

---

**9**  We note that because burglary involves an entry for the purpose of committing a felony or theft, not all burglaries involve a theft or asportation.

the robbery.'  We agree.  [¶] Although [the victim] testified that she gave defendant the $5 in fear that he would repeat the earlier injuries, there is no evidence that he did inflict any injury in carrying out the robbery."  (*Id*. at p. 656.)

Here, unlike *Malone*, there was no break in the action while perpetrator and victim shared drinks.  Instead, defendant assaulted the victim during the kidnapping and robbery -- crimes involving the asportation of property and movement of the victim -- and at the earliest possible moment, the victim took evasive action in an obvious effort to resist the perpetration of those crimes and avoid further blows to the head.

We conclude the section 12022.7 GBI enhancement was properly attached to the assault conviction.

### III.  Section 1202.5 Crime Prevention Fines

Defendant argues the trial court improperly imposed two section 1202.5 crime prevention fines of $10 each, for each of the two robbery counts (Counts Four and Six), because (1) the court stayed the prison sentences for the robbery counts under section 654,[10] and in any event section 1202.5 authorizes only one such fine per case.  We agree and strike one of the fines and stay the other under section 654.  As defendant notes, the trial court orally pronounced the section 1202.5 fines, but they do not appear in the abstract of judgment.  We order amendment of the abstract of judgment.

Defendant's failure to raise this point in the trial court does not forfeit it, because the error in punishment is clear and correctable and does not turn on any factual dispute.  (*People v. Smith* (2001) 24 Cal.4th 849, 852; *People v. Scott* (1994) 9 Cal.4th 331, 354.)

Former section 1202.5 provided for a crime prevention fine as follows:

---

[10]  Section 654, subdivision (a), states, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ."

20

"(a) In any case in which a defendant is convicted of any of the offenses enumerated in Section 211, 215, 459, 470, 484, 487, 488, or 594, the court shall order the defendant to pay a *fine* of ten dollars ($10) in addition to any other penalty or fine imposed. . . .

"(b)(1)  All fines collected pursuant to this section shall be held in trust by the county collecting them, until transferred to the local law enforcement agency to be used exclusively for the jurisdiction where the offense took place.  All moneys collected shall implement, support, and continue local crime prevention programs.  [¶]  (2) All amounts collected pursuant to this section shall be in addition to, and shall not supplant funds received for crime prevention purposes from other sources. . . ."  (Italics added.)

"The $10 obligation pursuant to . . . section 1202.5(a) is a criminal fine . . . ." (*People v. Knightbent* (2010) 186 Cal.App.4th 1105, 1109.)

When sentence on a count is stayed pursuant to section 654, *all* punishment associated with that conviction, including penal fines, must be stayed.  (*People v. Pearson* (1986) 42 Cal.3d 351, 361 ["section 654 prohibits the use of a conviction for any punitive purpose if the sentence of that conviction is stayed"].)

"Punishment" includes fines.  (§ 15.)  In *People v. Le* (2006) 136 Cal.App.4th 925, the court held a trial court could not base the amount of a restitution fine on a conviction for which sentence has been stayed under section 654.  (*Id.* at p. 934.)

The People argue the section 1202.5 crime prevention fine is not "punishment." They cite *People v. Wallace* (2004) 120 Cal.App.4th 867, which held that retroactive application of a $20 court operations assessment under section 1465.8[11] did not violate the ex post facto clause, because the fee has the nonpunitive objective of funding court

---

[11]  Section 1465.8 provides in part, "(a)(1) To assist in funding court operations, an assessment of [now] forty dollars ($40) shall be imposed on every conviction for a criminal offense, including a traffic offense, except parking offenses . . . ."

security, and is not so punitive as to negate the Legislature's intent that the fee constitutes a civil disability. (*Id.* at pp. 874-878.)

However, unlike the assessment in *Wallace*, "The $10 obligation pursuant to . . . section 1202.5(a) is a criminal fine . . . ." (*Knightbent, supra*, 186 Cal.App.4th at p. 1109.) In *Knightbent*, the defendant argued a section 1202.5 crime prevention fine is comparable to a restitution fine (§ 1202.4), which is exempt from additional penalties and surcharges, and therefore the section 1202.5 fine was also exempt from additional penalty assessments. (*Knightbent,* at pp. 1108-1110.) This court rejected the argument, noting section 1202.4 expressly makes restitution fines exempt, whereas section 1202.5 expressly states the crime prevention fine is in addition to any other penalty or fine. (*Id.* at p. 1110.)

We conclude the section 654 stay of sentence on the robbery convictions required stay of the section 1202.5 fines. Defendant asks us to *strike* the fines. However, the remedy is to stay execution of the fines, not to strike them. (*Pearson, supra*, 42 Cal.3d at p. 361 [§ 654 requires *stay* of punishment].)

Defendant argues in the alternative that one of the fines must be stricken on the ground that section 1202.5 authorizes only one fine per case, not per conviction. The People concede this point, and we agree. (*People v. Crittle* (2007) 154 Cal.App.4th 368, 371 [§ 1202.5 expressly authorizes only one fine per case].)

Accordingly, we order stricken one of the two section 1202.5 fines.

## DISPOSITION

The section 1202.5 fine on Count Four is stayed pursuant to section 654. The section 1202.5 fine on Count Six is stricken. The abstract of judgment shall be amended to include the consecutive one-year sentence on Count Seven. The trial court shall prepare an amended abstract of judgment reflecting the consecutive one-year sentence on Count Seven; a "stay" of the GBI enhancement on Count Seven; and to show one section 1202.5 fine, stayed pursuant to section 654. The trial court shall forward a copy of the

22

amended abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.


      MURRAY       , J.


We concur:


  BLEASE       , Acting P. J.


  NICHOLSON    , J.