Filed 10/30/24  P. v. Valdovinos CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062584 |
| v. | (Super. Ct. No. 20CF0967) |
| FERNANDO VALDOVINOS, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Lance P. Jensen, Judge. Affirmed.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Evan Stele, Deputy Attorneys General, for Plaintiff and Respondent.

Following a bench trial, appellant Fernando Valdovinos was convicted of multiple offenses. Great bodily injury allegations and certain enhancements were also found to be true. The trial court sentenced Valdovinos to 25 years to life imprisonment under the "One Strike" law for personally inflicting great bodily injury on Jane Doe in the commission of a sex offense. (Pen. Code, § 667.61, subds. (a) & (d)(6).)[1] On appeal, Valdovinos concedes he inflicted great bodily injuries on Jane Doe but argues the evidence was insufficient to prove it was "in the commission of" the sex offenses. We affirm because sufficient evidence supported the trial court's determination.

FACTUAL AND PROCEDURAL HISTORY

On May 1, 2020, Doe, who was then 75 years old, was found nonresponsive in bushes next to a church parking lot. She was nude from the waist down, had blood on her face, both of her eyes were swollen, and there was a pool of blood on the ground underneath her head. Doe lived in her vehicle and often parked her vehicle overnight at the same church, but her vehicle was not there when Doe was found.

Doe was transported to a hospital where a forensic nurse conducted a physical examination of her. Doe was unconscious, sedated, and intubated during the exam. She had multiple injuries, including, inter alia, swelling and bruising to both eyes, a hemorrhage to her left eye, a laceration to the side of her head, bruising to both sides of her neck and under the chin, bruising to her breast, and injuries to her genitals.

A surveillance camera video, retrieved from the business adjacent to the church and timestamped the evening of April 30, 2020, showed a

_____

[1] All undesignated statutory references are to this code.

2

subject, later identified as Valdovinos, talking to Doe near the rear of her vehicle. The two then walk toward the front of the vehicle and out of the surveillance camera's view. Approximately 20 to 25 minutes later, the surveillance camera video showed Valdovinos walk back into view and out toward the street. He then returns into view with an additional woman and they leave in Doe's vehicle.

On May 2, 2020, police detained Valdovinos while he was driving Doe's vehicle. In an interview with police, Valdovinos initially claimed he obtained the vehicle for someone named Mike. Valdovinos stated Mike was forcing him to do things, but Valdovinos later admitted there was no Mike. Valdovinos said he was in the church parking lot on April 30, 2020, to steal Doe's vehicle. According to Valdovinos, after telling Doe he was going to steal her vehicle, Doe said taking her vehicle was a sin and he should know better because he knows about God. Valdovinos told the officer he told Doe he knew it was a sin and knew about God. Valdovinos also told the officer Doe asked him what God was telling him to do, to which he responded, "'God [was] telling [him] to beat [her] up.'" Valdovinos recounted, when Doe asked him if it was "'going to hurt,'" he responded "'[y]eah.'"

Valdovinos told the officer he threw Doe to the ground, punched her twice in the face, and she appeared to be unconscious. He said when he saw Doe's blood, he had a flashback of being raped by his stepfather. He became aroused, touched Doe's breast, and pulled down her pants. Valdovinos said he tried to rape Doe but could not become erect, so he digitally penetrated her while he masturbated and then ejaculated into a nearby bush.

In an information, the district attorney charged Valdovinos with five counts: assault with force likely to produce great bodily injury (§ 245,

3

subd. (a)(4); count 1); sexual penetration by foreign object and force (§ 289, subd. (a)(1)(A); count 2); attempted forcible rape (§§ 664, subd. (a), 261, subd. (a)(2); count 3); carjacking (§ 215, subd. (a); count 4); and unlawful taking of a vehicle (Veh. Code, § 10851, subd. (a); count 5).[2] The information also alleged Valdovinos personally inflicted great bodily injury in the commission of the offense in count 2 (Pen. Code, § 667.61, subds. (a) & (d)(6)) and during the commission and attempted commission of the offense in count 3 (§ 12022.8). Additionally, as to counts 1, 3, and 4, it alleged Valdovinos personally inflicted great bodily injury on Doe, who was 70 years or older (§ 12022.7, subd. (c)).

Valdovinos waived his right to a jury trial and the case proceeded to a bench trial. Multiple witnesses testified, including several police officers, the forensic nurse who performed the physical examination of Doe, and the person who first found Doe in the bushes. Valdovinos moved for judgment of acquittal under section 1118 as to the section 667.61 allegation for count 2 and the sections 12022.7 and 12022.8 enhancements for count 3. After reviewing supplemental briefing from the parties and hearing argument, the trial court denied Valdovinos's motion.

The trial court found Valdovinos guilty on counts 1 through 4. It also found the section 667.61, subdivisions (a) and (d)(6) allegation for count 2 to be true as well as all the enhancements. Relevant to this appeal, the trial court selected count 2 as the principal term and sentenced Valdovinos to 25 years to life imprisonment pursuant to section 667.61.

---

[2] At the beginning of the trial, the district attorney moved to dismiss count 5, which the trial court granted.

## DISCUSSION

Under section 667.61, subdivisions (a) and (d)(6), a defendant who is convicted of certain sex offenses shall be sentenced to 25 years to life imprisonment if "[t]he defendant personally inflicted great bodily injury on the victim or another person in the commission of the present offense in violation of [s]ection . . . 12022.7, or 12022.8."[3] On appeal, Valdovinos concedes he inflicted great bodily injuries on Doe,[4] but he argues the evidence was insufficient to prove great bodily injury was inflicted in the commission of the sex offenses. Thus, he contends the trial court erred in finding true the great bodily injury allegation for count 2 (§ 667.61, subdivisions (a) & (d)(6))

---

[3] Section 12022.7, subdivision (a), provides "[a]ny person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years." Section 12022.7, subdivision (c), provides "[a]ny person who personally inflicts great bodily injury on a person who is 70 years of age or older, other than an accomplice, in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for five years." Section 12022.8 provides "[a] person who inflicts great bodily injury, as defined in [s]ection 12022.7, on a victim in . . . a violation or attempted violation of paragraph (2), (3), or (6) of subdivision (a) of [s]ection 261 . . . shall receive a five-year enhancement for each violation in addition to the sentence provided for the felony conviction."

[4] For purposes of this opinion, the great bodily injuries refer to the injuries Doe sustained as a result of Valdovinos hitting Doe. As we affirm based on those great bodily injuries, we need not address the Attorney General's alternative argument that the injuries to Doe's genitals constituted great bodily injuries inflicted in the commission of the sex offenses.

5

and the great bodily injury enhancements for count 3 (§§ 12022.7, subd. (c), 12022.8[5]). We disagree.

Whether Valdovinos inflicted great bodily injury in the commission of the sex offenses is a factual issue for the trier of fact to decide. (See *People v. Masbruch* (1996) 13 Cal.4th 1001, 1007 (*Masbruch*) [whether firearm was used "'in the commission of' an enumerated sex offense is for the trier of fact to decide"].) "In reviewing a criminal conviction challenged as lacking evidentiary support, "'the court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.'" [Citation.] The same standard of review applies to cases in which the prosecution relies mainly on circumstantial evidence [citation], and to special circumstance allegations [citation]." (*People v. Maury* (2003) 30 Cal.4th 342, 396.) "To the extent defendant's argument implicates statutory interpretation, our review is de novo." (*People v. Elder* (2014) 227 Cal.App.4th 411, 417 (*Elder*).)

"'"[I]n the commission of" has been given an expansive, not a tailored meaning.' [Citation.] '"[I]n the commission of" is not the same as "while committing," "while engaged in," or "in pursuance."'" (*People v. Calles* (2012) 209 Cal.App.4th 1200, 1222 (*Calles*).) As the California Supreme Court has explained "[i]n the case of a weapons-use enhancement, such use may be deemed to occur 'in the commission of' the offense if it occurred *before,*

---

[5] Section 12022.8 uses "in a violation" of the sex offense instead of "in the commission" of the sex offense. Valdovinos's argument on appeal only addresses the "commission" language, and he does not contend the "violation" language in section 12022.8 has a different meaning.

*during, or after* the technical completion of the felonious sex act." (*People v. Jones* (2001) 25 Cal.4th 98, 109–110 (*Jones*), superseded by statute on another ground as stated in *People v. Andrade* (2015) 238 Cal.App.4th 1274, 1307.) In *Jones*, our Supreme Court concluded the language "'in the commission of'" in the weapons-use provisions at issue there had the same meaning as the phrase under the felony-murder provisions. (*Jones, supra,* at p. 109.) Notably, *Jones* described the felony-murder doctrine as focusing, not on semantics or simple chronology, but instead on the relationship between the killing and underlying felony. (*Id.* at pp. 109–110 [stating the operative question in *Jones* was "whether the sex offense posed a greater threat of harm—i.e., was more culpable—because the defendant used a deadly weapon to threaten or maintain control over his victim"].)

Additionally, in *Masbruch*, the defendant pointed a gun at a woman, tied her and her mother up, spent an hour torturing and robbing them, and then raped and sodomized the woman. (*Masbruch, supra,* 13 Cal.4th at pp. 1004–1005, 1011.) Notwithstanding the passage of time between the display of the gun and the sex offenses, the California Supreme Court concluded the evidence was sufficient to support a finding the gun was used in the commission of the sex offenses. (*Id.* at p. 1011.) As our high court explained, "[i]n considering whether a gun use occurred, the jury may consider a 'video' of the entire encounter; it is not limited to a 'snapshot' of the moments immediately preceding a sex offense. Thus, a jury could reasonably conclude that although defendant's presence with the victims was sporadic, the control and fear created by his initial firearm display continued throughout the encounter." (*Ibid.*; see also *People v. Wilson* (2008) 44 Cal.4th 758, 806–808 [recognizing "'use'" of a firearm does not need to "be strictly contemporaneous with the base felony"].)

7

*Jones* and *Masbruch* involved weapons-use enhancements, and Valdovinos contends that whether great bodily injury was inflicted in the commission of a sex offense is different than the "use" of a weapon because an injury is "inflicted" at a specific point in time. To the extent Valdovinos is attempting to argue "in the commission of" for purposes of a great bodily injury enhancement should be narrowly construed to mean the infliction of the great bodily injury has to occur at the exact same moment as the sexual assault, we disagree and Valdovinos cites no authority in support of this position. Indeed, in *Calles* and *Elder*, the appellate courts relied, in part, on *Jones* when construing "in the commission of" in the context of great bodily injury enhancements under section 12022.7. (See *Calles, supra,* 209 Cal.App.4th at pp. 1222–1223; *Elder, supra,* 227 Cal.App.4th at pp. 421–422.) We see no reason to reach a different conclusion under section 12022.8.

Here, there was substantial evidence supporting the trial court's finding Valdovinos inflicted great bodily injury in the commission of the sex offenses. From Valdovinos's own account, he punched Doe multiple times and, right after, committed the sex offenses. The infliction of the great bodily injuries, which appeared to render her unconscious, directly facilitated the sex offenses and Valdovinos's control over the victim.

Valdovinos, however, argues he did not inflict the injuries to maintain control of Doe for the sex offenses because "[o]nly after he inflicted the injuries did [he] form any intent to sexually assault Jane Doe." This argument is unavailing because there was substantial evidence to support Valdovinos's intent to commit the sex offenses when he punched Doe. As noted, Valdovinos stated he committed the sex offenses after punching Doe, and the trial court could reasonably find Valdovinos had the intent to commit the sex offenses when he punched her. Valdovinos argues his statement to

8

police that he formed the intent after seeing blood and having a flashback of his stepfather raping him is conclusive evidence as to his intent and the sequence of events. But it is reasonable for a trier of fact to not have credited Valdovinos's statement about when he formed the intent to commit the sex offenses. (See *People v. Disa* (2016) 1 Cal.App.5th 654, 668 [the trier of fact "was free to disbelieve defendant's self-serving statements"].)[6]

## DISPOSITION

The judgment is affirmed.

MOTOIKE, J.

WE CONCUR:

MOORE, ACTING P. J.

SANCHEZ, J.

---

[6] Given our conclusion, we need not address the Attorney General's alternative arguments that Valdovinos did not need to have already formed the intent to commit the sex offenses when he inflicted the great bodily injuries, or that the evidence also supported a finding he punched Doe more than twice and continued to hit her at the same time as the sex offenses.