Filed 6/24/15  P. v. Vizcarra CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANDREZ BARRAZA VIZCARRA,<br><br>    Defendant and Appellant. | G050258<br><br>(Super. Ct. No. 11CF3108)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, M. Marc Kelly, Judge.  Affirmed.

Eric Cioffi, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Sean M. Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

Andrez Barraza Vizcarra appeals from a judgment after a jury convicted him of attempted first degree residential burglary of an inhabited dwelling, possession of a firearm in violation of a protective order, possession of a firearm by a felon, evading a police officer while driving recklessly, and misdemeanor violation of a protective order, and found he used a firearm. Vizcarra argues the trial court erred in denying his motion of acquittal of attempted residential burglary. We disagree and affirm the judgment.

FACTS

Vizcarra and Marisol Cervantes were in a relationship for over 10 years, but it was volatile. In September 2009, Vizcarra and Cervantes were at a party when one of Cervantes's male colleagues kissed her on the cheek. Vizcarra threw his car keys at Cervantes and called her names, including a "hoe." After Vizcarra and Cervantes left and got into the car, Vizcarra continued calling Cervantes names and accused her of infidelity. He hit her in the face with a closed fist. As they left the parking lot, one of Cervantes's female colleagues asked why she was leaving. Vizcarra hit Cervantes again, giving her a bloody nose. Cervantes reported the incident to the Tustin Police Department. They had two children at the time.

In December 2009, Vizcarra pleaded guilty to domestic violence (Pen. Code, § 273.5, subd. (a), all further statutory references are to the Pen. Code, unless otherwise indicated), and the trial court placed him on probation for three years. The probation terms prohibited Vizcarra from owning, using, or possessing a deadly or dangerous weapon or owning ammunition. Additionally, he could not have any communication with Cervantes, or come within 100 yards of her. Nevertheless, Vizcarra and Cervantes continued to have an on-again, off-again relationship and Cervantes found out she was pregnant with their third child.

In November 2011, Cervantes and her two youngest daughters lived at Cervantes's parents' house in Santa Ana after Vizcarra accused Cervantes of infidelity. Cervantes's grandfather also lived there. Early one morning, Vizcarra repeatedly called

2

the home telephone and Cervantes's cell phone. When Cervantes answered the phone, Vizcarra said he wanted to speak with her about the alleged affair. Vizcarra arrived at the house about 8:00 a.m. uninvited. Vizcarra spoke to Cervantes through the locked front security door. Vizcarra called her a "bitch" and said he knew she was having an affair. Vizcarra eventually left.

Vizcarra returned the same afternoon with telephone bills he claimed proved Cervantes was having an affair. Vizcarra yelled at Cervantes for not answering his calls, accused her of cheating on him, and pounded on the locked outer security door. Through the security door, Vizcarra accused Cervantes of "fucking lying" to him and called her a "bitch" and a "hoe." He also told her to open the door and come outside. After Cervantes closed the wooden interior door, Vizcarra opened the mail slot, accused her of lying to him, and called her a "slut." Cervantes twice saw Vizcarra reach for something in his pocket. She took her children, who were upset and crying, to the back room. She went to her mother's room and called the police. After Cervantes refused to open the security door, Vizcarra spent about half an hour stubbornly asking Cervantes's grandfather to open the door and let him inside. Vizcarra eventually left, and officers arrived. Later, Cervantes's grandfather told the police Vizcarra displayed a firearm.

Officer Dean Fulcher found Vizcarra in a parked truck nearby. Fulcher asked Vizcarra to place his hands outside the vehicle for officer safety, but he moved his hands in and out of the vehicle. Vizcarra was "extremely animated" and sweating profusely. Fulcher called for backup, and another officer arrived. Vizcarra, who had been looking back the entire time, placed his hands inside the truck and fled, reaching unsafe speeds and nearly colliding with another vehicle as he turned into an alley. Fulcher briefly lost sight of Vizcarra when he turned into the alley. When Fulcher caught him, Vizcarra stopped. Officers searched Vizcarra's vehicle and found a camouflage gun holster, an ammunition cartridge, and an iPod. They also searched the nearby area and found a loaded black .40 caliber semiautomatic handgun on the other side of a wooden

3

fence in the alley. The gun was about 500 to 600 feet from where Vizcarra stopped his vehicle. Vizcarra's cell phone contained a photograph of the handgun and the camouflage pouch recovered from his truck.[1]

An information charged Vizcarra with attempted first degree residential burglary of an inhabited dwelling (§§ 664, subd. (a), 459, 460, subd. (a)) (count 1), receipt or possession of a firearm in violation of a protective order (§ 12021, subd. (g)(1)) (count 2), possession of a firearm by a felon (§ 12021, subd. (a)(1)) (count 3), evading a police officer while driving recklessly (Veh. Code, § 2800.2) (count 4), misdemeanor violation of a protective order (§ 166, subd. (c)(1)) (count 5), and resisting and obstructing an officer (§ 148, subd. (a)(1)) (count 6-this count was later dismissed). The information alleged he personally used a firearm during the commission of count 1.

At trial, Vizcarra presented evidence that he was familiar with Cervantes's parent's home and knew he could get in through the back door, which was kept unlocked. Although an officer testified Cervantes's grandfather stated Vizcarra displayed the weapon while he was trying to persuade Cervantes to open the door, Cervantes's grandfather testified at the preliminary hearing and at trial that Vizcarra displayed the weapon as he walked back to the truck. Testimony tended to establish Cervantes never saw a gun but thought Vizcarra had one.

At the close of evidence, the trial court denied Vizcarra's motion to dismiss count 1 pursuant to section 1118.1. The jury convicted Vizcarra of all counts and found true the firearm use allegation. The trial court sentenced Vizcarra to six years and eight months in prison as follows: two years on count 1 and four years consecutive on the

_____

[1]    In *Riley v. California* (2014) ___ U.S. ___, 134 S.Ct. 2473, the Supreme Court of the United States held police must obtain a warrant to search a suspect's cell phone and may not rely on the search incident to arrest exception to the Fourth Amendment's warrant requirement. Vizcarra does not raise this issue on appeal. Any error would be harmless because there was other evidence establishing Vizcarra was armed when he went to the residence. (*Chapman v. California* (1967) 386 U.S. 18.)

firearm use enhancement; and one-third of the middle term of eight months on count 4. The court imposed concurrent sentences on counts 2 and 5 and stayed the sentence on count 3 pursuant to section 654.

DISCUSSION

Vizcarra contends the trial court erred in denying his section 1118.1 motion for acquittal of count 1. We disagree.

"[We] review[] the denial of a section 1118.1 motion under the standard employed in reviewing the sufficiency of the evidence to support a conviction. [Citation.] '[W]e do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [¶] The same standard of review applies to cases in which the prosecution relies primarily on circumstantial evidence . . . . [Citation.] "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility.' [Citation.] Review of the denial of a section 1118.1 motion made at the close of a prosecutor's case-in-chief focuses on the state of the evidence . . . at that point. [Citation.]" (*People v. Houston* (2012) 54 Cal.4th 1186, 1215.)

To find a defendant guilty of attempted residential burglary, the prosecution must prove the defendant attempted to enter a dwelling with the intent to commit any felony. (§§ 459, 664.) An attempt to commit any felony consists of the following: a specific intent to commit the crime; and a direct but ineffectual act done toward its commission. (*People v. Carpenter* (1997) 15 Cal.4th 312, 387, superseded by statute on another ground as stated in *Verdin v. Superior Court* (2008) 43 Cal.4th 1096, 1106.)

5

"The act must not be mere preparation but must be a direct movement after the preparation that would have accomplished the crime if not frustrated by extraneous circumstances. [Citation.]" (*Ibid*.) If criminal intent clearly appears, only slight acts in furtherance of the criminal design are enough to constitute an attempt. (*People v. Memro* (1985) 38 Cal.3d 658, 698, overruled on another ground by *People v. Gaines* (2009) 46 Cal.4th 172, 181, fn. 2.) The overt act does not need to be the ultimate step toward commission of the crime. (*Ibid*.)

Here, at the outset, Vizcarra asserts the evidence was lacking because the incident occurred openly in broad daylight and he made such a spectacle of himself, he could not possibly have attempted to burgle the home. It is true that "'[g]enerally burglaries are committed in secret at a time when the occupants are absent or asleep and in most cases firearm use or injury to the occupant occurs only after the intruder is discovered on the premises.' [Citation.]" (*People v. Elder* (2014) 227 Cal.App.4th 411, 424, quoting *People v. Walls* (1978) 85 Cal.App.3d 447.) However, Vizcarra acknowledges "[t]he entry need not be a trespass to support a burglary conviction[]" and "a person who enters for a felonious purpose may be found guilty of burglary even if he enters with the owner's or occupant's consent." (*People v. Frye* (1998) 18 Cal.4th 894, 954 [cases cited therein], disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *People v. Riccardi* (2012) 54 Cal.4th 758, 815.) Although we agree secretly attempting to gain entry "is the clearest, most classic factual proof," it is not the only manner in which to attempt to gain entry, a point Vizcarra concedes.

Here, the evidence demonstrated Vizcarra went to the residence armed with a gun to confront Cervantes about whether she was having an affair. Vizcarra pounded on the locked security door, called Cervantes derogatory names, and demanded she open the door and come outside. After she closed the wooden interior door, Vizcarra opened the mail slot and continued haranguing Cervantes. Based on Vizcarra's movements, she believed he had a gun, although she did not see it. When Cervantes retreated into the rear

6

of the home, Vizcarra spent about 30 minutes trying to persuade Cervantes's grandfather to open the door and let him in. Vizcarra attempted to gain entry into the home but was unsuccessful. Based on this evidence, a trier of fact could reasonably conclude Vizcarra had the specific intent to enter the home.

Vizcarra's reliance on the evidence he was familiar with the home's layout and knew the back door was kept unlocked is unpersuasive. We review the court's denial of a section 1118.1 motion to determine whether the prosecutor offered sufficient evidence to submit the case to the jury. As we explain herein, the prosecutor did. Conflicts in the evidence are for the jury to decide.

There was also evidence from which the trier of fact could reasonably conclude Vizcarra had the specific intent to commit a felony once inside. Vizcarra went to Cervantes's home armed with a gun to confront her about his belief she was cheating on him. Sorry, but no one takes a gun to have a calm and peaceful conversation about any topic, much less infidelity. His conduct at the front door demonstrates he was volatile and agitated—he pounded on the locked security door and called the mother of his children vile names. Vizcarra's demeanor, which he characterizes as a "tantrum" not "some uncontrollable rage," caused his children to cry and caused Cervantes to call the police. You can't pound on a locked door while yelling at and calling the mother of your children a "fucking liar," "bitch," "hoe," and "slut," and then quibble over labels.

Moreover, Vizcarra had a history of using Cervantes as a punching bag. In 2009, after a male colleague kissed Cervantes on the cheek, Vizcarra threw his keys at her. Once in the confines of their car, he twice hit her in the face with a fist. Vizcarra's very cursory attempt to argue the 2009 incident was too remote is meritless. (Evid. Code, § 1109, subd. (e) [10-year rule]; *People v. Johnson* (2010) 185 Cal.App.4th 520, 534-535 [discussing cases where prior domestic violence of nine years and 10 years not too remote].) Based on this evidence, a trier of fact could reasonably conclude Vizcarra had the specific intent to enter the home to commit a felony.

Vizcarra portrays the incident as one where he calmly knocked on the door and politely asked to enter the home to have a rational and peaceful conversation about the possibility Cervantes was being unfaithful to him. The evidence concerning the incident, and the evide nce regarding the 2009 incident, paint a far different picture. As we explain above, Vizcarra, who had a history of domestic violence, went to Cervantes's home armed with a firearm. He confronted her in an angry and hostile manner and demanded she remove the only thing that kept her and her children safe; the locked security door.

Based on the entire record, there was sufficient evidence from which the trier of fact could conclude Vizcarra had the specific intent to enter Cervantes's residence to at the very least assault her with a deadly weapon. Thus, the trial court properly denied Vizcarra's section 1118.1 motion because the prosecutor submitted sufficient evidence to submit the case to the jury.

### DISPOSITION

The judgment is affirmed.

O'LEARY, P. J.

WE CONCUR:

RYLAARSDAM, J.

THOMPSON, J.

8