Filed 4/9/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B324576 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA086118) |
| v. | |
| HILDO OCAMPO ESTRADA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Hilleri G. Merritt, Judge.  Reversed and remanded.

Jonathan E. Demson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan S. Pithey, Assistant Attorney General, Michael C. Keller and Charles S. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Appellant Hildo Ocampo Estrada appeals from the superior court's order denying his petition for resentencing at the prima facie stage of the proceedings under Penal Code section 1172.6[1] as to his attempted murder and voluntary manslaughter pleas. We conclude that the record of conviction does not establish that Estrada is ineligible for relief as a matter of law even if we consider the preliminary hearing transcript. Accordingly, we reverse and remand.

## BACKGROUND

### I. Relevant factual and procedural history

On August 1, 2017, the Los Angeles County District Attorney's Office charged Estrada under count 1 with the murder of Martin Corio (§ 187, subd. (a)), with the allegation that Estrada personally used a deadly and dangerous weapon (§ 12022, subd. (b)(1)). Count 2 charged Estrada with the willful, deliberate, and premeditated attempted murder (§§ 664 & 187, subd. (a)) of Carlos Zuniga Flores and alleged that Estrada personally inflicted great bodily injury on Zuniga Flores. (§ 12022.7, subd. (a)). Count 3 charged Maria Elena Adame with assault with force likely to cause great bodily injury (§ 245, subd. (a)(4)) upon Zuniga Flores and alleged that she personally inflicted great bodily injury on him.

On July 18, 2017, a preliminary hearing took place. Detective Christian Mayes and Officer Juan Garcia testified. Officer Garcia testified that on or about February 9, 2016, he responded to a call at a liquor store. Officer Garcia approached a man who was in the fetal position with his face covered in blood. The man said his name was Carlos, later identified as Carlos

---

[1]     All further statutory references are to the Penal Code unless noted otherwise.

2

Zuniga Flores. A woman named Rosa told Officer Garcia and his partner that someone was stabbed, and directed Officer Garcia to the injured man. Officer Garcia's sergeant discovered the body of decedent Corio. Officer Garcia approached two individuals at the scene named Perez (or Lopez) and Gonzalo. Rosa, in reference to Perez and Gonzalo, told Officer Garcia, "Hey, those guys were involved." Officer Garcia observed that Perez dropped something on a bus bench. Officer Garcia noticed that it was a box cutter. Officer Garcia observed that Gonzalo and Perez had blood on their shirts and shoes. Perez had cuts on his hands. Officer Garcia requested two additional units to detain Gonzalo and Perez and transport them to the police station. Video surveillance showed that there was a third unidentified person with Gonzalo and Perez.

Detective Mayes testified that an autopsy report showed that Corio sustained 12 stab wounds. His cause of death was multiple stab wounds from a homicide.

On or around April 13, 2016, Detective Mayes interviewed Adame. Adame told Detective Mayes that Estrada and two individuals named Jose and Conejo were drinking alcohol in a parking lot near an encampment. Their group got into a fight with another group that included Zuniga Flores. Zuniga Flores pulled Adame by her hair. Multiple people were involved in the fight. Adame did not indicate whether Gonzalo and Perez were involved in the fight. Adame stated that Estrada sustained an injury on the side of his face. Estrada and Adame went to the hospital and returned to the encampment the same night. Estrada was angry and obtained a knife. Adame stated that Estrada found Corio and stabbed him.

3

Adame saw Zuniga Flores laying on the ground. She said she was angry that he accosted her earlier in the day. She yelled at him and out of anger, kicked him in the face. Adame then stated that Estrada kicked Zuniga Flores twice in the face and stomped down on his head once. Adame then observed Gonzalo walking towards the parking lot.

On or around February 8, 2016, Detective Mayes also interviewed Estrada. Detective Mayes testified that Estrada told him that there was a fight between two groups and Corio stabbed him. According to Detective Mayes, Estrada was upset over the fight and his injury. Adame told him, "let's just do something about it." Detective Mayes further testified that Estrada and Adame found Corio asleep or passed out. Detective Mayes testified that Estrada said he stabbed Corio "two or three times." Detective Mayes further testified that Estrada also told him that he kicked Zuniga Flores once in the face and stomped on his head twice.

On July 9, 2018, the prosecution filed an amended information. Count 1 charged Estrada with the willful, deliberate, and premeditated murder of Corio (§ 187, subd. (a)) with an allegation that he personally used a deadly weapon in the commission of the offense (§ 12022, subd. (b)(1)). Count 2 charged Estrada with the attempted murder (§§ 664 & 187, subd. (a)) of Zuniga Flores with an allegation that he personally inflicted great bodily injury (§ 12022.7, subd. (a)) on Zuniga Flores.

On July 10, 2018, Estrada pleaded no contest to voluntary manslaughter (§ 192, subd. (a)) and attempted murder (§§ 187, subd. (a), 664). Estrada admitted to use of a deadly weapon (§ 12022, subd. (b)(1)) and great bodily injury (§ 12022.7,

4

subd. (a)).  As to the attempted murder charge, the prosecution struck the willful, premeditated, and willful allegation.  Estrada was sentenced to an aggregate determinate term of 15 years and 4 months.

Estrada's plea form shows that he stipulated and agreed there was a factual basis for his plea and that he was pleading no contest to take advantage of a plea bargain under *People v. West* (1970) 3 Cal.3d 595.  A *West* plea is a "a plea of nolo contendere, not admitting a factual basis for the plea."  (*In re Alvernaz* (1992) 2 Cal.4th 924, 932.)

On May 11, 2022, Estrada filed a petition for resentencing under section 1172.6.

On August 17, 2022, the prosecution filed an opposition stating that Estrada was ineligible for relief because he was the actual killer.

On October 3, 2022, Estrada filed a reply to the People's opposition.  Estrada argued that the record of conviction does not establish that Estrada is ineligible for relief as a matter of law.  Estrada argued that the record of conviction did not foreclose that malice was imputed onto him based solely on his participation in a crime.

On October 17, 2022, the court held a hearing on Estrada's petition for resentencing.  The court concluded that "it would appear that a prima facie case cannot be made because Mr. Estrada was the actual killer."  The court did not state which portion of the record of conviction supported its conclusion.

Estrada timely appealed.

## II.  Attorney General's request for judicial notice

The Attorney General requests that we take judicial notice of the preliminary hearing transcript in *People v. Estrada*

5

(Los Angeles County, 2022, No. PA086118). Appellant does not oppose the request. We grant the request and take judicial notice of the preliminary hearing transcript in case No. PA086118 because it is a record of a court of this state. (See Evid. Code, § 452; Cal. Rules of Court, rule 8.252(a).)

## DISCUSSION

### I. Applicable legal background

The California Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) to " 'amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)" (*People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)

Senate Bill 1437 did this by amending section 188, which defines malice, and section 189, which defines the degrees of murder. (Stats. 2018, ch. 1015, §§ 2, 3.) Amended section 188 states: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (*Id.*, subd. (a)(3).) Amended section 189 states: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the

6

commission of murder in the first degree.  [¶] [or] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (*Id.*, subd. (e).)

Effective January 1, 2022, Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) " '[c]larifie[d] that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural [and] probable consequences doctrine are permitted the same relief as those persons convicted of murder under the same theories.' " (*People v. Birdsall* (2022) 77 Cal.App.5th 859, 865, fn. 18; *People v. Vizcarra* (2022) 84 Cal.App.5th 377, 388.)

"In its current form, section 1172.6 applies to those who pled guilty to manslaughter after being charged with murder and who would have been subject to prosecution for murder under a felony murder theory, the natural and probable consequences doctrine, or any other theory of imputed malice.  (§ 1172.6, subd. (a).)  To be eligible for relief, the petitioner must make a prima facie showing that he could not presently be convicted of murder under changes to these theories of murder liability made effective January 1, 2019, by" Senate Bill 1437.  (*People v. Gaillard* (2024) 99 Cal.App.5th 1206, 1211 (*Gaillard*).)

Prior to these amendments, a jury could convict a defendant of murder under the felony-murder rule and the natural and probable consequences doctrine without finding malice.  A defendant could be convicted of attempted murder under the theory that the defendant aided and abetted a crime where murder was a natural and probable consequence.  (See *People v. Chiu* (2014) 59 Cal.4th 155, 161.)  Under the law at that time, it was not necessary to prove that the defendant intended

7

that the attempted murder be committed or even that the defendant subjectively foresaw that attempted murder could result. (See *id.* at pp. 161–162.) Under the felony-murder rule as it existed before 2019, malice was imputed if the defendant intended to commit the underlying qualifying felony. (*People v. Chun* (2009) 45 Cal.4th 1172, 1184.)

Eligible defendants may petition for resentencing relief. (§ 1172.6, subd. (a), former § 1170.95; *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).) Under section 1172.6, subdivision (a), "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine . . . or manslaughter may file a petition" with the sentencing court to have his or her murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts "when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder. [¶] (3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019" under Senate Bill 1437. (§ 1172.6, subd. (a).) After receiving a petition containing the required information, "the court must evaluate the petition 'to determine

8

whether the petitioner has made a prima facie case for relief.' " (*Strong*, at p. 708 [citing § 1172.6, subd. (c)].)  If the defendant makes a prima facie showing for relief, the court must issue an order to show cause and hold an evidentiary hearing.  (§ 1172.6, subds. (c), (d)(3).)

In ascertaining whether a defendant has made a prima facie case for relief, the trial court may look at the record of conviction, which will necessarily inform its "prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*).)  "While the trial court may look at the record of conviction after the appointment of counsel to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited. . . . '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'  [Citation.] 'However, if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' "  (*Id*. at p. 971.)

"In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'  [Citation.] . . . [T]he 'prima facie bar was intentionally and correctly set very low.' "  (*Lewis, supra,* 11 Cal.5th at p. 972.)  "At the prima facie stage, a court must accept as true a petitioner's allegation that he or she could not currently be convicted of a homicide offense because of changes to section 188 or 189 made effective January 1, 2019, unless the

allegation is refuted by the record. [Citation.] And this allegation is not refuted by the record unless the record conclusively establishes every element of the offense." (*People v. Curiel* (2023) 15 Cal.5th 433, 463 (*Curiel*).) If the petitioner makes a prima facie showing of eligibility, the trial court must issue an order to show cause and hold an evidentiary hearing. (*Ibid.*)

We review de novo whether the trial court conducted a proper inquiry under section 1172.6, subdivision (c). (*People v. Harrison* (2021) 73 Cal.App.5th 429, 437.)

## II.   Analysis

Estrada contends that the trial court erred by finding him ineligible for relief under section 1172.6 at the prima facie stage of the proceedings. Estrada argues that nothing in the record of conviction conclusively forecloses his eligibility. We agree.

The information charged Estrada with attempted murder, alleging that Estrada "unlawfully and with malice aforethought attempt[ed] to murder" Zuniga Flores. Because the crime of attempted murder was generically charged, the complaint allowed the prosecution to proceed on a theory of attempted murder under the natural and probable consequences doctrine. (See § 1172.6, subd. (a)(1); *People v. Davenport* (2021) 71 Cal.App.5th 476, 484.) Our Supreme Court has held that "only a single statutory offense of murder exists." (*People v. Nakahara* (2003) 30 Cal.4th 705, 712.) "[I]t has long been the law in this state that an accusatory pleading charging murder need not specify degree or the manner in which the murder was committed." (*People v. Thomas* (1987) 43 Cal.3d 818, 829, fn. 5.) Nor does an accusatory pleading need to "specify the theory of murder on which the prosecution relies at trial." (*People v.*

*Contreras* (2013) 58 Cal.4th 123, 147.) "Specifically, neither felony murder nor murder under the natural and probable consequences doctrine need be separately pleaded." (*People v. Rivera* (2021) 62 Cal.App.5th 217, 233.)

Estrada's plea to the attempted murder charge does not answer the question of whether intent could have been imputed to him under the natural and probable consequences doctrine. (*People v. Montes* (2021) 71 Cal.App.5th 1001, 1007–1008.) Estrada did not plead to any particular type of malice when pleading to attempted murder. Further, he did not admit to any specific theory of attempted murder. Instead, the record shows that he pleaded to the generic charge of attempted murder without the "willful, deliberate, and premeditated" allegation. He did not admit he harbored an intent to kill.

In pleading no contest to voluntary manslaughter of Corio, Estrada also did not admit to a specific theory of guilt. (*Gaillard, supra,* 99 Cal.App.5th at p. 1212.) Estrada only admitted to "voluntary manslaughter in generic terms." (*Ibid*.) Thus, the prosecution could have proceeded under any theory of liability, including a natural and probable consequences theory. (*Ibid*.; see also *People v. Eynon* (2021) 68 Cal.App.5th 967, 977.) As such, his generic plea does not make him ineligible for relief at the prima facie stage as a matter of law.

Likewise, Estrada's bare admission of the enhancements for personal use of a deadly weapon (§ 12022, subd. (b)(1)) and infliction of great bodily injury (§ 12022.7, subd. (a)) do not establish that he acted with the intent to kill or refute that he was convicted on a theory of imputed malice. As with pleading guilty to a criminal offense, a plea or admission of a sentencing enhancement is likewise deemed a judicial admission of only

11

elemental facts necessary to the enhancement. (*People v. Saez* (2015) 237 Cal.App.4th 1177, 1206.) The enhancements alleged under section 12022, subdivision (b)(1), and section 12022.7 require only a general intent to use a deadly weapon or inflict bodily injury. (*People v. Offley* (2020) 48 Cal.App.5th 588, 598; *People v. Elder* (2014) 227 Cal.App.4th 411, 424.) Thus, Estrada's admissions do not establish that he acted with the requisite malice aforethought.

The Attorney General contends that the trial court's ruling should nonetheless be affirmed because the amended information establishes that Estrada was the sole perpetrator of attempted murder and voluntary manslaughter. Thus, malice could not have been imputed to him.

The amended information does establish that Estrada was charged alone, but a charging decision does not establish any facts as a matter of law. (See *People v. Das* (2023) 96 Cal.App.5th 954, 962.) Moreover, we are aware of no authority requiring prosecutors to try all codefendants together, so this single charging document does not foreclose the possibility of other people having been charged for related crimes. Even further, the information did not foreclose the prosecution from presenting imputed malice before a jury regardless of whether it charged others. Thus, the charging document here does not establish ineligibility as a matter of law, where Estrada's " 'prima facie bar was intentionally and correctly set very low.' " (*Lewis, supra,* 11 Cal.5th at p. 972.)

Moreover, the trial court did not state the basis for its finding that Estrada was the actual killer. To the extent the court relied on the preliminary hearing transcript, such reliance

12

here was improper because it required the court to engage in impermissible fact finding.

Our Supreme Court has emphasized that at the prima facie stage, a trial court is only permitted to deny the petition if the record of conviction "foreclose[s] [the] possibility [that the petitioner was convicted under an invalid theory] *as a matter of law.*"  (*Curiel*, *supra*, 15 Cal.5th at p. 470.)  If there is a possibility that the petitioner could provide evidence to rebut the evidence in the record of conviction, including the preliminary hearing transcript, the resolution of the matter involves factfinding, and an evidentiary hearing is required.  (*Lewis*, *supra*, 11 Cal.5th at p. 972.)

Courts of Appeal are divided on whether a trial court can consider a preliminary hearing transcript at the prima facie stage for resentencing under section 1172.6.  In *Davenport*, our colleagues in the First District held that the trial court erroneously relied on that transcript to make the prima facie determination because the defendant "did not stipulate to the transcript as a factual basis for his plea."  (*Davenport*, *supra*, 71 Cal.App.5th at p. 481.)  In contrast, our colleagues in Division One of this district instructed that trial courts can rely on uncontradicted preliminary hearing transcripts to discern facial eligibility under section 1172.6 even if a defendant does not stipulate to it as a factual basis for a plea. (*People v. Pickett* (2023) 93 Cal.App.5th 982, 992, review granted Oct. 11, 2023, S281643 (*Pickett*).)  Similarly, our colleagues in Division Three of this district held that a court may rely on the preliminary hearing transcript at the prima facie stage if the evidence contained within it is uncontroverted.  (*People v. Patton* (2023) 89 Cal.App.5th 649, 658, review granted June 28, 2023, S279670

13

(*Patton*).)  Most recently, in *People v. Mares* (2024) 99 Cal.App.5th 1158 (*Mares*), our colleagues in the Fourth District concluded that the record of conviction, including a preliminary hearing transcript, foreclosed that the defendant could have been convicted of murder under a now-abrogated theory.  (*Id.* at p. 1168.)

Estrada did not stipulate to the preliminary hearing transcript as a factual basis for his plea.  But even assuming the trial court could rely on the preliminary hearing transcript, we conclude that *Patton*, *Pickett*, and *Mares* are distinguishable. In those cases, the Courts of Appeal held that the evidence contained in the preliminary hearing transcript conclusively foreclosed the possibility that the petitioner was convicted under an invalid theory of liability.  Thus, the preliminary hearing evidence did not require the court to engage in impermissible factfinding.

Here, in contrast, relying on the preliminary hearing transcript to foreclose a successful section 1172.6 motion at this stage would require the court to engage in impermissible factfinding.  (*Lewis, supra,* 11 Cal.5th at p. 972.)  At the prima facie stage, the evidence contains testimony that could potentially suggest multiple perpetrators were involved, potentially undermining the Attorney General's argument that Estrada was the actual killer or direct perpetrator.  Beyond Estrada, there were two people with blood on their clothes, and one of the individuals carried a box cutter.  Thus, the preliminary hearing testimony "standing alone, does not conclusively establish as a matter of law that [Estrada] was the actual killer, acted with intent to kill or actual malice, or was a major participant in an underlying crime who acted with reckless indifference to human

14

life" without making factual findings and credibility determinations.  (*People v. Flores* (2022) 76 Cal.App.5th 974, 991–992.)

Accordingly, the court erred in denying Estrada's petition at the prima facie stage.  We express no opinion on the merits of the petition at the evidentiary hearing.

## DISPOSITION

The order summarily denying Estrada's petition is reversed.  The matter is remanded with directions to issue an order to show cause under section 1172.6, subdivision (c), and to hold an evidentiary hearing under section 1172.6, subdivision (d)(1).


VIRAMONTES, J.


WE CONCUR:


STRATTON, P. J.


WILEY, J.


15