Filed 5/30/24  P. v. Hernandez CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>ALVINO JOE HERNANDEZ, et al.,<br><br>  Defendants and Appellants. | 2d Crim. No. B323576<br>Cons. w/B324054<br>(Super. Ct. No. 2008006111)<br>(Ventura County) |

Brothers Alvino Joe Hernandez and Lino Felipe Hernandez were convicted of one count of murder and three counts of attempted murder in 2008.  Each filed a petition for resentencing in 2022 under former Penal Code[1] section 1170.95 (now section 1172.6).  The trial court found the jury's "true" findings on gang special circumstance allegations under section 190.2, subdivision

---

[1] All statutory references are to the Penal Code unless otherwise noted.

(a)(22) precluded Alvino and Lino[2] from relief as a matter of law. It denied the petitions without issuing an order to show cause. We consolidated their appeals for all purposes.

We will reverse the denial as to Alvino's murder count and remand with instructions to issue an order to show cause and conduct an evidentiary hearing. We express no opinion on the attempted murder counts because his petition, and the trial court, did not address them.

We will reverse the denial on all counts as to Lino and remand, likewise with instructions to issue an order to show cause and to conduct an evidentiary hearing.

FACTS AND PROCEDURAL HISTORY

*Labor Day 2006 Shooting*

Alvino, Lino, and Alejandro Salas belonged to the Colonia Chiques gang in Oxnard. On Labor Day in 2006, Salas asked Alvino to provide "back up" in a prescheduled fist fight between the Chiques and a local tagging group called "DSK." Alvino agreed. He suspected the members of DSK might be armed so he retrieved two pistols: a TEC-9 with an extended clip and a Makarov 9mm. Alvino gave Lino the TEC-9 and kept the Makarov for himself.

Alvino, Lino, and Salas walked to the nearby apartment complex where the fight was to occur. They saw DSK member Moises Lopez and his girlfriend Michele White getting out of a car. They followed the two into the courtyard of the complex. Moises saw the Chiques approach and called another DSK member, Richard Gonzalez, who was in an upstairs apartment.

---

[2] We use the first names of appellants and others who share a last name. No disrespect is intended.

2

He asked Gonzalez to come downstairs and to bring a gun. Moises' brothers Abraham and Octavio went down first and were soon joined in the courtyard by Gonzalez, who had retrieved a pistol from a drawer.

Octavio accused Lino of hiding a weapon under his sweatshirt. Alvino "got scared" when he saw Gonzalez reach toward his hip. He grabbed the Makarov from his belt and fired one shot at Gonzalez before it jammed. Lino pulled out the TEC-9 and began firing rapidly. Abraham and Gonzalez were both hit but managed to produce their pistols and return fire. Alvino saw Abraham aiming his gun toward Lino. He hit Abraham in the face with the handle of the jammed Makarov and took the gun before fleeing.

Octavio received four gunshot wounds and died at the scene from blood loss. Abraham and Gonzalez were struck several times and suffered permanent injuries. White was hit in the leg. Investigators recovered 21 expended bullet casings from Lino's TEC-9, one casing from Alvino's Makarov, two expended casings and one misfired bullet from Abraham's .380 pistol, and six casings from Gonzalez's .357 pistol.

*Murder and Attempted Murder Convictions*

A grand jury indicted Alvino, Lino, and Salas on charges of murder (one count) and attempted murder (three counts). All counts included two gang special circumstance enhancements (§§ 186.22, subd. (b)(1), 190.2, subd. (a)(22)) and alleged that a principal discharged a firearm causing great bodily injury or death (§ 12022.53, subds. (d) & (e)(1)). Lino's attempted murder charges included allegations that he personally inflicted great bodily injury on the three surviving victims. (§ 12022.7, subd. (a).)

3

At trial, the People argued defendants were guilty because the shootings were the natural and probable consequences of a conspiracy to commit battery. They asked jurors to elevate the murder charge to first degree because they killed Octavio "willfully, deliberately, and with premeditation" and "while lying in wait or immediately thereafter." (CALCRIM No. 521, § 189, subd. (a).) The jury found all three defendants guilty on all counts with true findings on the gang special circumstance allegations. It found Alvino and Lino guilty of first degree murder and Salas guilty of second degree murder. The conviction of Salas is not at issue in this appeal.

Alvino and Lino each received a sentence of life without the possibility of parole for the murder of Octavio Lopez, a consecutive nine-year determinate term for the attempted murder of Abraham Lopez, and consecutive 28-month determinate terms for the attempted murder of Moises Lopez and Michele White. The court imposed a consecutive term of 25 years to life on the firearm enhancement. It stayed the gang enhancements pursuant to section 654 and struck Lino's great bodily injury enhancements pursuant to section 1385. We affirmed the convictions on direct appeal. (*People v. Lino Hernandez, et al.* (June 24, 2013, B229363) [nonpub. opn.].)[3]

*Alvino's Petition for Resentencing*

Alvino petitioned for resentencing in February of 2022. He checked boxes stating: "A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of . . . murder under the natural and probable

---

[3] We granted Alvino's and Lino's unopposed requests for judicial notice of the record in the direct appeal. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

4

consequences doctrine"; and "I could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019." The petition form did not reflect then-recent amendments to section 1172.6 that enabled defendants to seek resentencing on convictions for attempted murder and manslaughter. (Sen. Bill No. 775 (2021-2022 Reg. Sess.).)

Alvino mistakenly checked box number 5, which stated, "I was convicted of 1st degree felony murder and I could not now be convicted because of changes to Penal Code § 189, effective January 1, 2019." He also checked the box stating "I was not the actual killer" but did not check the next two, which stated he "did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder" or that he "was not a major participant in the felony **or** [he] did not act with reckless indifference to human life."

The trial court appointed counsel. The People opposed the petition on two grounds. First, they argued the petition was facially insufficient because Alvino did not check the two boxes under number 5. Second, they argued the jury's gang enhancement findings under section 190.2, subdivision (a)(22)) precluded him from relief as a matter of law. The court agreed with the People and denied the petition without issuing an order to show cause. It also found Alvino "was a major participant in the underlying felony and acted with reckless indifference to human life."

*Lino's Petition for Resentencing*

Lino petitioned for resentencing in July of 2022. He too used a form petition, albeit one reflecting the recent amendments to section 1172.6. He checked boxes stating: "A complaint,

5

information, or indictment was filed against me that allowed the prosecution to proceed under a theory of . . . murder under the natural and probable consequences doctrine . . . , or attempted murder under the natural and probable consequences doctrine"; and "I could not presently be convicted of murder or attempted murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019."

The trial court appointed counsel. The People again argued the jury's gang enhancement findings under section 190.2, subdivision (a)(22) precluded Lino from relief as a matter of law. The People also argued the "true" findings on the great bodily injury enhancements to the attempted murder charges were an additional ground to deny Lino relief. The trial court denied the petition without issuing an order to show cause. It found "[t]he People prosecuted [Lino] on the theory he was the actual killer, or, in the alternative, if he was not . . . the actual killer, that he was a direct aider and abettor of the killing . . . by his co-defendant [Alvino] Hernandez." The court characterized the verdicts as "unambiguous" in showing Lino "was not convicted on [the] theory that intent was imputed to him by his actions in participating in the violent incident without knowledge of the possible outcome or by the specific intent of someone else involved in the violence."

## DISCUSSION

*Sen. Bill No. 1437 and Sen. Bill No. 775 Eliminated the Natural and Probable Consequences Doctrine as a Basis of Liability for Murder and Attempted Murder*

Sen. Bill No. 1437 eliminated the natural and probable consequences doctrine as a means of proving murder. (Stats. 2018, ch. 1015.) Section 188 now provides that, except when the

6

felony murder rule applies, "in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Sen. Bill No. 775 eliminated the doctrine as a basis of proving attempted murder as well. (Stats. 2021, ch. 551.)

Those convicted under the doctrine may petition the trial court to vacate the conviction and resentence them. (§ 1172.6, subd. (a).) A petition containing all required information is allowed to move to the "prima facie" stage of the proceeding. (*Id.*, subd. (c).) The court appoints counsel if requested, accepts briefing from both sides, and holds a hearing "to determine whether the petitioner has made a prima facie case for relief." (*Ibid.*) The court may summarily deny the petition if the record of conviction shows the petitioner is ineligible for relief as a matter of law. (*People v. Lewis* (2021) 11 Cal.5th 952, 970-972 (*Lewis*).) It may consider "documents in the court file or otherwise part of the record of conviction that are readily ascertainable" including the charging documents, jury instructions, verdict forms, and even transcripts of closing argument. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 329-330, abrogated on another point in *Lewis*, at pp. 961-962; *People v. Lopez* (2022) 78 Cal.App.5th 1, 13.)

"[A]t this preliminary juncture, a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'" (*Lewis*, *supra*, 11 Cal.5th at p. 972.) "[T]he trial court should accept the assertions in the petition as true unless facts in the record conclusively refute them as a matter of law." (*People v. Drayton* (2020) 47 Cal.App.5th 965,

7

968; *People v. Duchine* (2021) 60 Cal.App.5th 798, 811-815.) We review prima facie-stage denials de novo. (*Lewis*, at p. 961.)

*Jurors Were Instructed on the Natural and Probable Causes Doctrine and Encouraged to Convict Defendants Based on Their Participation in a Conspiracy to Commit Battery*

At trial, prosecutors characterized Lino as the "trigger man" who fired the most shots during the confrontation with DSK. They nevertheless urged the jury to find all three defendants liable for Octavio's murder as the natural and probable consequence of a conspiracy to commit battery. The prosecutor stated in closing: "I'm going to be explaining now the theories of murder, how we even get there. And we get there very directly, and it's all based upon these defendants acting together in concert, aiding and abetting each other because that at heart is what they did on September 4. Once we get through the aiding and abetting part and we're – the natural and probable consequences of their actions led to murder, then I'm going to tell you why it's first degree murder versus a second degree murder."

After laying out each defendant's role in the conspiracy, the prosecutor told the jury: "Now, as I said before, this natural and probable consequences theory leads to murder. It's a conspiracy to commit this battery. The Defendants are all bound by that, their first overt act toward the commission of that crime. They're done. So just in terms of an analysis, you have an aiding and abetting theory, the natural and probable consequence of conspiracy to commit battery, you end up with what we call second degree murder, which is the lowest level of murder. It was murder with malice aforethought." The prosecutor then described how the defendants' pre-shooting conduct constituted "lying in wait" and warranted elevating the murder conviction

8

from second degree to first degree. She presented the same theory of guilt for the attempted murders.

The trial court gave the jury separate but identical sets of instructions for each defendant. This included CALCRIM 403, which read in part: "To prove that the defendant is guilty of murder or attempted murder using the theory that murder or attempted murder was a natural and probable consequence of conspiracy to commit battery, the People must prove that: [¶] 1. The defendant is guilty of conspiracy to commit battery; [¶] 2. During the commission of conspiracy to commit battery, a coparticipant in that conspiracy to commit battery committed the crime of murder or attempted murder; [¶] AND [¶] 3. Under all the circumstances, a reasonable person in defendant's position would have known that the commission of the murder or attempted murder was *a natural and probable consequence of the commission of the conspiracy to commit battery*." (Italics added.) The instruction for murder (CALCRIM 520) likewise identified the doctrine as a ground to find the defendant had malice aforethought.

The jury clearly considered the doctrine as one theory upon which they could convict Alvino and Lino of murder and attempted murder. We must therefore determine whether the record of conviction "conclusively refutes" the allegations in each petition, or, as stated in *People v. Curiel*, whether it "conclusively establishes every element of the offense" under a still-valid theory such as direct liability or implied malice. (*People v. Curiel* (2023) 15 Cal.5th 433 463 (*Curiel*).)

9

*"True" Findings on the Gang-Murder Special Circumstance*
*and* People v. Curiel

In briefing, the People contended Alvino and Lino were precluded from relief because the jury found they intentionally killed Octavio while active participants in a criminal street gang. (§ 190.2, subd. (a)(22).)  The People argued these findings established as a matter of law that defendants acted with the requisite mental state to be convicted of murder and attempted murder under current law, despite the prosecution's reliance on the natural and probable consequence doctrine.  The trial court, they asserted, correctly denied the petitions without issuing an order to show cause and holding an evidentiary hearing.

Our Supreme Court decided *Curiel*, *supra*, 15 Cal.5th 433 while this appeal was pending.  *Curiel* held that a jury's finding of intent to kill under section 190.2, subdivision (a)(22) "does not, standing alone, . . . show that a petitioner . . . is liable for murder under any valid theory."  (*Id.* at p. 463.)  We invited the parties to file supplemental letter briefs addressing the effect, if any, of *Curiel* on this appeal.  We read and considered their briefs.

The People concede that "under *Curiel*, the jury's verdicts, viewed in light of the court's jury instructions, do not show the jury necessarily made factual findings covering the elements of murder" as to Alvino.  The People offer no such concession as to Lino, who they maintain "was convicted of the murder and attempted murders as the direct perpetrator who acted with malice aforethought."  We address the denial of their petitions separately for this reason and others, as explained next.

*Prima Facie Denial of Alvino's Petition*

The People appropriately concede Alvino is entitled to an evidentiary hearing on his petition.  The verdict forms and jury

10

instructions provide no insight into the bases of the jury's finding of guilt. It heard diverse and often conflicting accounts of each defendant's role in the shooting. The verdict forms, however, did not require them to identify the theory used to convict each defendant, to determine who inflicted Octavio's fatal wounds, or, crucially, to find Alvino aided and abetted the *killing* rather than the target offense of conspiracy to commit battery. Whether the jury took the path of least resistance to guilt—the natural and probable consequences doctrine—or reached their verdicts using still-valid theories of liability cannot be conclusively established from the record of conviction. The trial court thus erred when it denied his petition at the prima facie stage of proceedings regardless of its reasoning.

The minute order denying the petition reveals more problems with the decision. Alvino's failure to check the two boxes under item 5 was of no consequence. He was not charged with or convicted of felony murder. The trial court's related finding that Alvino was indeed "a major participant in the underlying felony and acted with reckless indifference to human life" under section 189, subdivision (e)(3) is problematic for the same reason. Prosecutors did not allege and did not need to allege he participated in an "underlying felony" because they did not charge him with felony murder. They sought his conviction on the theory that murder was the natural and probable consequences of conspiracy to commit battery. In addition, the trial court cited the jury's gang special circumstance findings under section 190.2, subdivision (a)(22) as precluding relief under section 1172.6. *Curiel* has since held otherwise.

Alvino requests we direct the trial court to issue an order to show cause as to all counts even though his petition did not seek

11

resentencing on the attempted murder convictions.  We decline.  Sen. Bill No. 775 went into effect nearly six months before the prima facie hearing.  The transcript of proceedings reveals he did not seek to amend his petition or even mention the attempted murder convictions at the time.  The trial court did not address them in its denial order.  As such, the issue is not properly before us.  We leave the trial court to decide on remand whether Alvino may amend his petition to include these additional allegations before the evidentiary hearing.

*Prima Facie Denial of Lino's Petition*

The People contend Lino is ineligible for relief as a matter of law because he "was prosecuted on the theory that he was the direct perpetrator" and did not dispute evidence that he fired the TEC-9.  Regardless of how prosecutors described Lino's role in the shooting, or the quantity of evidence pointing to him as Octavio's actual killer, the jury did not make factual findings on this issue.  They received identical verdict forms for each defendant on the murder count.  We are again left to speculate whether they based Lino's conviction on a theory of direct liability, direct aiding and abetting, or the natural and probable consequences doctrine based on a conspiracy to commit battery.  The trial court's order denying Lino's petition simply assumes his conviction was based on the first two theories while ignoring the prominence of the third in closing argument (and verdict forms).  The decision appears grounded not on the record of conviction, but on the trial court's view that the evidence weighs heavily in favor of Lino's conviction on still-valid theories.  The strength of Lino's request for resentencing should not bear on the court's analysis at this early stage.  Our Legislature, the Supreme Court

12

reminds us, set the prima facie bar "'intentionally and correctly . . . very low.'" (*Lewis*, 11 Cal.5th at p. 972.)

The People contend Lino was also ineligible for relief because jurors found true allegations that he personally inflicted great bodily injury (GBI) on the three attempted murder victims. (§ 12022.7, subd. (a).) This causal link to the victims' physical injuries may have justified a prima facie denial if the instructions and verdict forms established the jury used a theory of direct liability to convict him. (See, e.g., *People v. Harden* (2022) 81 Cal.App.5th 45, 55-56 [great bodily injury finding meant jury determined petitioner, the sole defendant, strangled the victim; jurors instructed on no alternative theories of murder].) They do not. The GBI finding means Lino performed the criminal act but does not prove he harbored the required mental state. "Section 12022.7 does not require that the defendant intend to inflict GBI." (*People v. Elder* (2014) 227 Cal.App.4th 411, 424.)

DISPOSITION

The judgment is reversed. On remand, we direct the trial court to issue orders to show cause and to conduct evidentiary hearings for appellants as provided in section 1172.6, subdivision (d). We express no opinion on their entitlement to relief.

NOT TO BE PUBLISHED.

CODY, J.

I concur:

GILBERT, P. J.

13

YEGAN, J., Dissenting:

I respectfully dissent. The result reached by the majority opinion is at variance with common sense. In the last several months, I have been concurring in the result reached by our opinions requiring that the superior court conduct evidentiary hearings under compulsion of the strict letter of California Supreme Court authority. I have even authored opinions requiring an evidentiary hearing where appropriate. Our Supreme Court has never spoken to the California Constitution's mandate not to reverse unless there has been a miscarriage of justice. Another district of the Court of Appeal has now held that resentencing errors are reversible only if there is a miscarriage of justice pursuant to the California Constitutional mandate. I once again implore the Supreme Court to grant review and hold that resentencing errors are subject to the California Constitutional mandate. (See *People v. Arreguin* (2023) 89 Cal.App.5th 58, 63-64 (conc. opn. of Yegan, J.) and discussion, *infra*.) I am familiar with the authorities relied upon by the majority opinion. But the application of these rules leading to reversal, in the presenting situation, borders on being ridiculous. There is no miscarriage of justice here. Reversal is an exaltation of form over substance. The objective reader will make up his or her own mind.

Two rival criminal street gangs agreed to fight at a given time and place. Appellants armed themselves with a 9mm Tec-9 machine gun and a 9mm Makarov pistol. Rival gang members also brought firearms to the fight. For extra firepower, one of the appellants used an extended large capacity magazine on the Tec-9. These gang confrontations are not conducted under the Queensberry rules of fighting. Based upon experience, logic, and the behavior of criminal street gangs in general, this was a recipe

for death and that is exactly what happened.  A rival gang member was murdered by appellants.  Two other rival gang members were wounded in the gun battle.  The apparent reason that there was no further body count at the morgue is that the Makarov jammed after one shot.  That there were not more deaths is not attributable to a lack of effort.  These are the historical facts which cannot be changed by any evidentiary hearing or any type of legal legerdemain.  This can only be described as murder both before and after the legislative changes to the murder rules.  Notwithstanding the murder instructions given at the jury trial, I am waiting for an explanation how these appellants did not commit murder under present statutes.[1]

Appellants falsely checked the box that they cannot be presently convicted under existing California murder law.  This would be laughable except that the majority opinion excuses this major flaw without discussion.  It orders a meaningless evidentiary hearing for appellants to attempt to whittle down their sentences.  Does the Legislature intend that the changes to the murder statutes allow armed gang members who use and discharge firearms in a gun battle, to escape punishment for murder?  To ask the question is to answer it.

The trial court's decision to deny an evidentiary hearing is, at best, harmless error.  It is not reasonably probable that they will prevail at an evidentiary hearing.  (*People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, opn. by Streeter, J., holding that errors with

---

[1] The jury was instructed on the now jettisoned "natural and probable consequences doctrine."  But, it was also instructed on other valid theories of murder, i.e., "direct perpetrator" and "direct aiding and abetting."

2

respect to resentencing are to be judged by the familiar California "miscarriage of justice" rule.)  It is a virtual certainty that the motions for reduction of sentences will be denied after an evidentiary hearing.  I am waiting to see the majority opinion explain away our constitutional obligation not to reverse unless there is a "miscarriage of justice."  Our constitutional obligation, our oath of office, runs to the California Constitution, not a legislative resentencing act.  The judgments (orders denying resentencing) should be affirmed.

NOT TO BE PUBLISHED.


YEGAN, J.

3

Patricia M. Murphy, Judge
David R. Worley, Judge
Superior Court County of Ventura

_____

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant Alvino Hernandez.

Ralph H. Goldsen, under appointment by the Court of Appeal, for Defendant and Appellant Lino Hernandez.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri and Scott A. Taryle, Supervising Deputy Attorneys General, Marc A. Kohm and Chung L. Mar, Deputy Attorneys General, for Plaintiff and Respondent.