Filed 2/3/26  P. v. Serrano CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B339768 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA083318) |
| v. | |
| JONATHAN SERRANO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Shellie Samuels, Judge.  Affirmed.

Esther R. Sorkin, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Lauren Sanchez, Deputy Attorneys General, for Plaintiff and Respondent.

Jonathan Serrano pled no contest to attempted murder and assault.  A court sentenced him to a prison term that included a one-year term under Penal Code[1] section 667.5 and a three-year term for a great bodily injury enhancement under section 12022.7.  Thereafter, the trial court struck the one-year term, and Serrano moved for a full resentencing hearing at which he asked the trial court to strike the three-year term.  The trial court denied the motion.  Serrano appeals from the order denying the motion, contending there was insufficient evidence to support its findings.  We reject the contention and affirm the order.

## BACKGROUND

I.    The underlying crimes

We summarize the following facts from the probation report.  Brothers Ronald L. and Jason L. lived together in an apartment.  They allowed gang members to stay at their apartment, and Serrano was one of the gang members who would come to the apartment several times a day.  When the gang members began causing problems with other tenants, the apartment manager told Ronald and Jason to stop bringing gang members to the apartment.  Ronald and Jason told the gang members they had to leave because they were bringing drugs to the complex and their neighbors had complained.

On April 14, 2016, Serrano and others forced their way into the apartment.  Serrano confronted Ronald, telling him, " 'I told you to let me in the apartment,' " placed a knife on Ronald's face, and cut his face.  When Jason tried to come between Serrano and

---

[1]    All further undesignated statutory references are to the Penal Code.

2

Ronald, Serrano stabbed Jason in the eye. The knife penetrated Jason's brain, causing bleeding of the brain.

II.    The charges, plea, and sentence

A felony complaint filed in 2016 charged Serrano with attempted murder (§§ 664, 187, subd. (a); count 1 [Jason]), mayhem (§ 203; count 2 [Jason]), and assault with a deadly weapon (§ 245, subd. (a)(1); count 3 [Ronald]). The complaint alleged that Serrano personally inflicted great bodily injury under section 12022.7, subdivision (a) as to all counts and that he had a prior conviction within the meaning of the "Three Strikes" law and under sections 667.5, subdivision (b) and 667, subdivision (a)(1).

On September 26, 2017, Serrano pled no contest to counts 1 and 3 and admitted he had a prior strike within the meaning of the Three Strikes law, the one-year prior under section 667.5, subdivision (b), and the great bodily injury allegation. That same day, a court sentenced Serrano to the midterm of 7 years doubled to 14 years on count 1, 2 years on count 3, 3 years for the great bodily injury allegation, and 1 year under section 667.5, subdivision (b). Counsel stipulated to a factual basis for the plea, and the court found there was a factual basis for the plea and admissions.

III.    Motion for resentencing

In August 2022, the trial court struck the one-year prior that had been imposed under section 667.5, subdivision (b).

In February 2024, Serrano moved for a full resentencing under section 1172.75. He asked the trial court to strike his prior strike and the great bodily injury enhancement and to accordingly resentence him to a total prison term of 8 years (7

3

years on count 1 and 1 year on count 3). He argued that he had two mitigating circumstances: (1) multiple enhancements were alleged in a single case and (2) the current offense was connected to prior victimization or childhood trauma.

Serrano submitted a report prepared by a mitigation specialist, Raji Shivshanker. Shivshanker reported that Serrano was born in 1993 and committed the offenses when he was 22 years old. Serrano never knew his father, who abandoned his mother when she was pregnant, and such abandonment, especially for boys of color, is linked to delinquency. The abandonment made Serrano feel he lacked structure and stability.

Serrano's mother grew up in extreme poverty in Honduras and was homeless when the report was completed.

During his childhood, Serrano shared a single bedroom with his mother and brother, and frequently experienced housing and food instability. When he was 12 years old, Serrano stole food from a store. Serrano and his older brother were often unsupervised because their mother worked overnight, and they used drugs and alcohol together as teenagers. According to trauma experts, chronic homelessness, food insecurity, and poverty is a "type of cumulative trauma which can greatly impact a child's development."

Serrano's mother would hit him with a belt or stick, and he reported being sexually abused. Sexual abuse trauma can contribute to "symptoms of trauma, including dissociation, avoidance and numbing through drugs and alcohol, and depression."

Serrano also had significant speech delays, slower cognitive processing, and memory issues. He was diagnosed with a

4

learning disability when he was eight years old, but his progress declined in middle school and he did not graduate from high school.  As a result of his disability, Serrano was bullied, which caused him to react by fighting with other students.  According to Shivshanker, learning disabilities can make school a frustrating and isolating place and contribute to low self-esteem.  Bullying contributed to Serrano's symptoms of depression, including anger, sadness, irritability, and isolation.  At the time of the report, Serrano was experiencing involuntary body spasms and twitches when pressured to speak.

Serrano grew up in a gang neighborhood, which desensitized him to the "sights and sounds of gang activity," like shootings, criminal activity, and drugs.  When he was 12 years old, Serrano was already a gang member, and gang members gave him a gun and easy access to drugs, like crystal meth.  And when he was 13 years old, Serrano saw someone get shot, which caused him to freeze and experience physical pain.

When Serrano was 10 years old, he fell out of a tree and hurt his knees and back, and they have continued to cause him pain.  He was stabbed when he was 16, and his mother stitched the wound rather than take him to the hospital.  And his lip was cut during a fight when he was 16 years old.

Serrano drank beer daily from the ages of 13 to 15, smoked marijuana daily since he was 13 years old, and started snorting crystal meth at the age of 15.

His first arrest was at age 13 for robbery, and he went to juvenile camp twice.  Serrano had other arrests before the age of 18 for drug use.  However, he did not receive drug treatment or intervention.  When Serrano was 20 years old, he was arrested for robbery and was sentenced to prison.  When he was released

from prison in 2016, he relapsed and began taking crystal meth again, and he was on crystal meth when he committed the at-issue offenses. According to the report, Serrano did not remember the events of that day.

Serrano has a history of drug-induced psychosis. In 2016, a clinical psychologist diagnosed him with borderline intellectual functioning and a psychotic disorder related to substance abuse, and the psychologist expressed concern about a longstanding intellectual disability. That same year, she found he was incompetent to stand trial.

As of the time of the mitigation report, Serrano had completed a substance abuse treatment program; maintained sobriety; was enrolled in a computer literacy class, alcoholics anonymous, narcotics anonymous, and positive parenting; had a kitchen job; and had a rules violation in 2019 and another in November 2023 for cursing in class.

The report concluded that Serrano experienced "significant Adverse Childhood Experiences (ACEs)" before his 18th birthday. ACEs are linked to chronic health problems, mental illness, and substance abuse problems in adolescence and adulthood. "For [Serrano], risk factors throughout his childhood outweighed his protective factors. As he grew into adolescence, [Serrano] adapted to the environment around him to meet his needs. [Serrano] continues to need intensive supportive services to pursue educational and vocational goals, substance abuse treatment, and opportunities to build skills for employment. [¶] Should there be opportunity for discretion in [Serrano's] resentencing matter, it is recommended that the circumstances of his childhood and adolescence be considered as mitigating factors."

At the trial court's request, Serrano filed a supplemental brief regarding his conduct in prison. The brief reported that, in 2016, Serrano completed the Transitions Re-entry program, and in 2022 he completed Cognitive Behavior Intervention—Outpatient, which is designed to "provide substance use disorder focused education and prevention resources that promote recovery, and teach healthy coping strategies aimed at managing addiction and criminogenic needs." Serrano completed Adult Basic Education II in 2022 and was working on part III and Cognitive Behavior Intervention in 2023. His classification score for facility placement purposes was Level IV. His oral language skills were in the low range and he scored " 'Below Norms' " in all subtest areas, including expressive vocabulary and semantics, which indicated a negative impact on his academic performance. A report from his case file showed he is a "good performer" despite a stuttering problem and comprehension issues. Serrano worked in the prison kitchen prepping vegetables.

IV.    Hearing on motion for resentencing

At the hearing on Serrano's motion, the trial court said it would not strike the prior strike conviction but would consider dismissing the great bodily injury enhancement.[2]

The prosecutor represented that he had been unable to find Jason, who was unhoused, had a mental illness resulting from this incident, and cannot see out of the eye that Serrano injured. Further, in 2019, Serrano committed a battery on a fellow inmate, and in 2023, Serrano was placed in restricted housing. And he has had at least 10 rule violations, some of which were for

---

[2]    The hearing took place over two days.

throwing paper balls in class, failing to sit in an emergency, and manufacturing alcohol.

Defense counsel represented that Serrano's classification had gone to a lower security level. Serrano also spoke at the hearing, saying he was taking classes and was trying to better himself. He also expressed remorse for what he did to the victims.

The trial court expressed its opinion that Serrano "already got a huge benefit" and "an incredibly good deal" because he did not have to plead to the mayhem charge. And after restating the circumstances of Serrano's crimes and damage to the victims, the trial court said that "the injury in this case far exceeds what is necessary for great bodily injury. This was a life-changing injury to the victim." The trial court referred to what happened after the victim left the hospital, i.e., Jason became unhoused, but said it would not consider that in its decision. Instead, the trial court said it would not strike the great bodily injury allegation "because of the nature of the injury. Someone can be charged with and convicted of a great bodily injury enhancement for a broken bone, for stitches, for injuries that caused pain for lingering amounts of time. [¶] The injury that you caused was life-changing. Losing your sight in one eye is life-changing. That's all I can say. I'm not going to go any further into how it apparently affected the victim and his life, but I know that it's probably the worst injury short of death that I have heard of in my 40-year career in criminal law." The trial court further found that Serrano's childhood did not "change one thing about the fact that" Serrano was unprovoked.

Accordingly, on July 29, 2024, the trial court denied Serrano's motion for resentencing.

8

## DISCUSSION

I.     General principles and standard of review

In 2021, our California Legislature passed Senate Bill No. 483, which added what is now section 1172.75.  (Stats. 2021, ch. 728, § 3.)  Section 1172.75 declared legally invalid one-year enhancements for a prior prison term imposed under section 667.5, subdivision (b), with an exception not relevant here.  If a judgment includes a qualifying enhancement, the trial court shall recall the sentence and resentence the defendant.  (§ 1172.75, subd. (c).)  Further, and as particularly relevant here, the resentencing court shall "apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing."  (§ 1172.75, subd. (d)(2).)

Senate Bill No. 81 (2021–2022) effected a change in law by adding subdivision (c) to section 1385.  That subdivision provides, "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute."  (§ 1385, subd. (c).)  "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.  'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  (§ 1385, subd. (c)(2).)

9

One such mitigating circumstance is when the current offense is connected to prior victimization or childhood trauma. (§ 1385, subd. (c)(2)(E).)  A connection exists when the trauma or victimization substantially contributed to the defendant's involvement in the commission of the offense.  (§ 1385, subd. (c)(6)(A) & (B).)

Under section 1385, subdivision (c), "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present." (*People v. Walker* (2024) 16 Cal.5th 1024, 1029.)  Resentencing courts must give special emphasis (*id.* at p. 1036) or "assign significant value" (*id.* at p. 1038) to the enumerated mitigating factors.  "Stated simply, if the court does not conclude that dismissal would endanger public safety, then mitigating circumstances strongly favor dismissing the enhancement.  But ultimately, the court must determine whether dismissal is in furtherance of justice.  This means that, absent a danger to public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.' " (*Id.* at p. 1036; see also *id.* at p. 1038.)

We review a trial court's decision not to dismiss a sentencing enhancement for an abuse of discretion.  (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 490.)  A trial court may abuse its discretion where "its decision is so irrational or arbitrary that no reasonable person could agree with it," "where

the trial court was not 'aware of its discretion' " to dismiss a sentencing allegation under section 1385, or "where the court considered impermissible factors in declining to dismiss." (*People v. Carmony* (2004) 33 Cal.4th 367, 377–378.)

II.     The trial court did not abuse its discretion by refusing to dismiss the three-year enhancement

Serrano contends that in denying resentencing, the trial court relied on a factor, the nature of the injury to the victim, for which there was not substantial evidence. As we now explain, we disagree.

Here, the trial court acknowledged that Serrano had a very troubled childhood. However, the trial court then relied on the life-changing nature of the injury to deny resentencing. Thus, although the trial court did not use these precise words, it found that this factor neutralized any mitigating circumstance, such that dismissing the enhancement was not in furtherance of justice. (*People v. Walker*, *supra*, 16 Cal.5th at pp. 1036, 1038.)

Serrano challenges this finding on two grounds. First, he argues that the trial court relied on inadmissible hearsay to find that Jason's injury was severe and life-changing. That is, the prosecutor said at the hearing that she had been unable to locate Jason and that, per his brother Ronald, Jason was unhoused, had mental problems because of the attack, and could not see out of the injured eye.

We need not decide whether the trial court did or could rely on the prosecutor's representations about Jason, because it could properly rely on the probation report. Courts have permitted the limited use of hearsay such as that in probation reports at resentencing proceedings, provided there is a substantial basis for believing the hearsay information is reliable. (*People v.*

11

*Arbuckle* (1978) 22 Cal.3d 749, 754–755; see, e.g., *People v. Hall* (2019) 39 Cal.App.5th 831, 838 [reliable hearsay statements in probation report admissible to show eligibility for relief under Prop. 64]; *People v. Sledge* (2017) 7 Cal.App.5th 1089, 1095 [hearsay in probation reports during Prop. 47 resentencing hearing admissible, provided substantial basis exists for its reliability]; *People v. Lamb* (1999) 76 Cal.App.4th 664, 683 [due process does not require criminal defendant be afforded same evidentiary protections at sentencing proceedings as afforded at trial]; § 1170, subd. (b)(4) [sentencing court can consider probation report].)

The probation report here stated that Serrano stabbed Jason in the eye, the knife penetrated Jason's brain causing bleeding of the brain and nearly killing him, and Jason required surgeries. There is a substantial basis for finding these statements reliable. First, at the plea hearing, counsel stipulated that the probation and police reports provided a factual basis for Serrano's plea. The trial court similarly found that the reports provided a factual basis for the plea. Second, there is no dispute that Serrano stabbed Jason in the eye. Third, at the resentencing hearing, Serrano apologized for "what I did to [ ] the victim" and he acknowledged the suffering he caused to Jason and Ronald. Thus, Serrano acknowledged that he injured Jason. These factors established the reliability of any hearsay statements in the probation report regarding Jason's injury.

Moreover, a section 12022.7, subdivision (a), enhancement applies when the defendant inflicts great bodily injury, which is " 'is an injury that is greater than minor or moderate harm.' " (*People v. Wyatt* (2012) 55 Cal.4th 694, 702; accord, *People v. Sandoval* (2020) 50 Cal.App.5th 357, 361 [great bodily injury is

"significant or substantial physical injury that is more than minor or moderate"].)  To "be significant or substantial the injury need not be so grave as to cause the victim ' "permanent," "prolonged," or "protracted" ' bodily damage."  (*People v. Cross* (2008) 45 Cal.4th 58, 64.)  Injuries that have been found to constitute great bodily injury include abrasions and bruises to a victim's legs, knees, and elbows, neck injury, and soreness in the victim's vaginal area that impaired her ability to walk (*People v. Escobar* (1992) 3 Cal.4th 740, 749–750), a gunshot to a leg and bullet fragments lodged in victim's arms, even though the victim lost little blood, no sutures were used, and the victim was released from the hospital the same day and returned to work the next day (*People v. Wolcott* (1983) 34 Cal.3d 92, 107–108), and a dislocated finger (*People v. Elder* (2014) 227 Cal.App.4th 411, 413, 415).  Here, the only act and injury underlying Serrano's plea to the attempted murder of Jason was that Serrano stabbed Jason in the eye with a knife.  It is unclear how this could not constitute great bodily injury.

Second, Serrano suggests that the trial court improperly refused to dismiss the enhancement because it thought that Serrano had already received a "huge benefit" and got "an incredibly good deal" because he did not have to plead to the mayhem charge.  Serrano argues that he was charged with simple mayhem based on the same conduct as formed the basis for the attempted murder count.  As such, any sentence he could have received for simple mayhem was less than the sentence for attempted murder, and, moreover, a court could not have sentenced him on both counts under section 654.  (See, e.g., § 204 [mayhem is punishable by 2, 4 or 8 years in prison]; § 664 [attempted murder is punishable by 5, 7, or 9 years in prison];

13

*People v. Bui* (2011) 192 Cal.App.4th 1002, 1015 [§ 654 prohibited punishment for both attempted murder and mayhem].)

Notwithstanding the trial court's comments about the benefit of Serrano's bargain, the trial court did not consider any benefit of the bargain when it ruled on whether to dismiss the enhancement. Rather, the trial court did not make the comments at the hearing at which it announced its ruling and reasoning. It made the comments at a prior hearing and in the context of its observations that mayhem was an unusual charge. And when it ruled, the trial court explained it was relying on the nature of the victim's injury to deny resentencing. The trial court did not refer to any benefit of the bargain Serrano received. Indeed, Serrano concedes in his opening brief that any benefit of the bargain was "not explicitly connected to the refusal to strike the enhancement." We therefore conclude that the trial court did not abuse its discretion by declining to dismiss the three-year enhancement.

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

ADAMS, J.